# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GARCIA,<br><br>　　　　　Plaintiff,<br>　　v.<br>LOS BANOS UNIFIED SCHOOL<br>DISTRICT, et al.,<br><br>　　　　　Defendants. | ) 1:04-CV-6059-SMS<br>)<br>) ORDER GRANTING IN PART<br>) DEFENDANTS' MOTION FOR SUMMARY<br>) JUDGMENT (DOC. 23)<br>)<br>)<br>)<br>)<br>) |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

I. <u>Background</u>

By stipulated order dated October 26, 2004, Judge Wanger granted Defendant Ray Heid's motion to dismiss the first claim for relief alleging a violation of Title VII against him because the Ninth Circuit had ruled that supervisors and co-workers who are not otherwise employers may not be individually liable for Title VII violations, subject to the Ninth Circuit's reversing its ruling before judgment is entered in this case. Judge Wanger also granted the motion of Defendant Los Banos Unified School

1

District (LB), a public school district and employer, to dismiss the second claim for relief against it (a claim pursuant to California's Fair Employment and Housing Act) because the district had Eleventh Amendment immunity.

Thus, the first amended complaint (FAC) filed on October 4, 2004, alleges 1) in the first claim a violation of Title VII against LB and its Governing Board; and 2) in the second claim a violation of the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12940 et seq., against Defendant Heid only.

More specifically, it is alleged in the FAC:

1) Defendants failed to take adequate action in connection with Plaintiff's informal internal complaints, lodged before March 24, 2003, of sexually offensive conduct by Defendant Heid, and Defendants retaliated against her by supervising her work more closely, giving her an unwarranted adverse employment evaluation, engaging in conduct intended to ridicule and embarrass her, and continuing to engage in sexually offensive conduct;

2) Defendant Heid discriminated against Plaintiff, a female employee whom he supervised, on the basis of sex by subjecting her to a continuing pattern of conduct creating a sexually hostile work environment, most recently manifested in May 30, 2003, when he made sexually suggestive comments and gestures to Plaintiff; and

3) Defendant LB, the employer, denied that sexual harassment occurred and failed to take appropriate action to remedy the effects of the discriminatory treatment that had been the basis

of Plaintiff's formal complaints. (FAC at 4-5.)

The complaint alleges that LB and the Governing Board engaged in discrimination because of sex in violation of 42 U.S.C. § 2000e-2(a), retaliation for Plaintiff's opposing unlawful discrimination in violation of § 2000e-3, and inadequate corrective action because of a failure to take all reasonable steps to prevent harassment of Plaintiff. (FAC at 5-6.) She alleged that Defendant Heid and the Governing Board of LB engaged in discrimination because of sex in violation of Cal. Govt. Code § 12940(a), retaliation in violation of Cal. Govt. Code § 12940(h), and inadequate corrective action by failing to take all reasonable steps to prevent harassment in violation of Cal. Govt. Code § 12940(I). (FAC at 5-6.) Plaintiff seeks compensatory damages for mental and physical injury, general damages, punitive damages, costs, and attorney's fees. (FAC at 7.)

Defendants answered the FAC on November 17, 2004, admitting jurisdiction, venue, employment status, Defendant Heid's supervisory position, the allegations regarding submission of charges and the complaint, and the role of the Governing Board, but denying the other factual allegations; they asserted affirmative defenses of failure to mitigate, exclusive Worker's Compensation remedy, failure to exhaust administrative remedies, statute of limitations, res judicata (administrative action), and failure to state a claim.

Pursuant to the parties' consent, Judge Wanger ordered the case assigned to the Magistrate Judge for all further proceedings on November 24, 2004.

Defendants filed the instant motion for summary judgment

1  and/or summary adjudication on July 22, 2005, including a notice,
2  memorandum, declaration of Robert J. Rosati with exhibits, and a
3  statement of undisputed facts. Plaintiff filed an opposing
4  memorandum and statement of controverting evidence with exhibits
5  on August 3, 2005. On September 30, 2005, Defendants filed a
6  reply, including a statement of additional undisputed facts and a
7  reply brief.

8       Defendants' motion came on regularly for hearing on October
9  7, 2005, at 9:30 a.m. in Courtroom 4 before the Honorable Sandra
10 M. Snyder, United States Magistrate Judge. Ray Hassan and Anthony
11 Bothwell appeared on behalf of Plaintiff; Robert J. Rosati
12 appeared on behalf of Defendants.  After argument, the parties
13 submitted supplemental briefs with exhibits on November 9, 2005,
14 and provided courtesy copies to the Court. The matter was
15 submitted to the Court.

16      II. <u>Summary Judgment</u>

17      Summary judgment is appropriate when it is demonstrated that
18 there exists no genuine issue as to any material fact, and that
19 the moving party is entitled to judgment as a matter of law.
20 Fed. R. Civ. P. 56(c). Under summary judgment practice, the
21 moving party

22              [A]lways bears the initial responsibility of
                informing the district court of the basis for
23              its motion, and identifying those portions of
                "the pleadings, depositions, answers to
24              interrogatories, and admissions on file,
                together with the affidavits, if any," which
25              it believes demonstrate the absence of a
                genuine issue of material fact.
26
   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It is the
27
   moving party's burden to establish that there exists no genuine
28

                                  4

1  issue of material fact and that the moving party is entitled to
2  judgment as a matter of law. <u>British Airways Board v. Boeing Co.</u>,
3  585 F.2d 946, 951 (9th Cir. 1978).

4       If a party moves for summary judgment with respect to a
5  matter as to which the opposing party has the ultimate burden of
6  persuasion at trial, then the moving party must show that the
7  opposing party cannot meet its burden of proof at trial by
8  establishing that there is no genuine issue of material fact as
9  to an essential element of the opposing party's claim or defense;
10 the moving party must meet the initial burden of producing
11 evidence or showing an absence of evidence as well as the
12 ultimate burden of persuasion. <u>Nissan Fire Ltd. v. Fritz Cos.,</u>
13 <u>Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its
14 burden of production, the moving party must either produce
15 evidence negating an essential element of the opposing party's
16 claim or defense, or show that the nonmoving party does not have
17 enough evidence of an essential element to carry its ultimate
18 burden of persuasion at trial. <u>Id.</u> (citing <u>High Tech Gays v.</u>
19 <u>Defense Indus. Sec. Clearance Office</u>, 895 F.2d 563, 574 (9th Cir.
20 1990)). In order to carry its ultimate burden of persuasion on
21 the motion, the moving party must persuade the court that there
22 is no genuine issue of material fact. <u>Id.</u>

23      However, "where the nonmoving party will bear the burden of
24 proof at trial on a dispositive issue, a summary judgment motion
25 may properly be made in reliance solely on the pleadings,
26 depositions, answers to interrogatories, and admissions on file."
27 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323. Indeed, summary
28 judgment should be entered, after adequate time for discovery and

upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial. Id. "[A] complete failure of proof concerning
an essential element of the nonmoving party's case necessarily
renders all other facts immaterial." Id. In such a circumstance,
summary judgment should be granted, "so long as whatever is
before the district court demonstrates that the standard for
entry of summary judgment, as set forth in Rule 56(c), is
satisfied." Id. at 323.

If the moving party meets its initial responsibility, the
burden then shifts to the opposing party to establish that a
genuine issue as to any material fact actually does exist.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986). In attempting to establish the existence of this
factual dispute, the opposing party may not rely upon the denials
of its pleadings, but is required to tender evidence of specific
facts in the form of affidavits or admissible discovery material
in support of its contention that the dispute exists. Rule 56(e);
Matsushita, 475 U.S. at 586 n.11. The opposing party must
demonstrate that the fact in contention is material, i.e., a fact
that might affect the outcome of the suit under the governing
law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,
i.e., the evidence is such that a reasonable jury could return a
verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,
818 F.2d 1433, 1436 (9th Cir. 1987).

1      III. <u>Defendant Heid's Argument that the FEHA Claim Is Barred</u>
            <u>by Plaintiff's Failure to Challenge the Determination</u>
2           <u>of the School Board</u>

3           Defendant Heid claims that the FEHA action against him is

4      barred because Plaintiff pursued a grievance with the school

5      board, which found that she was not the victim of harassment, and

6      Plaintiff failed to challenge that finding by filing and pursuing

7      a mandate action in state court. Plaintiff asserts that she did

8      not pursue the school board's formal complaint procedure, so the

9      board's determination could not be binding; further, she is not

10     barred by any failure to seek judicial review because Defendant

11     failed to give her notice of the availability of judicial review

12     and the time period within which such review was required to be

13     initiated.

14          In <u>Johnson v. City of Loma Linda</u>, 24 Cal.4th 61 (2000), it

15     was held that a FEHA action brought by a terminated employee was

16     barred by laches where the personnel board of the city-employer

17     had ruled against the employee in a grievance proceeding, and

18     where the city council had affirmed the personnel ruling, because

19     the employee had failed to file a timely challenge to the city's

20     ruling in the form of a petition for writ of administrative

21     mandamus in the California courts. The California Supreme Court

22     ruled that with respect to FEHA claims, under the doctrine of

23     exhaustion of judicial remedies, where a party pursues an

24     administrative remedy, receives an adverse finding, and fails to

25     have the finding set aside through judicial review procedures,

26     the administrative finding is binding in a later civil action

27     concerning discrimination claims under FEHA. <u>Id.</u> at 76. The court

28     in <u>Johnson</u> noted that the Title VII claim was not barred by the

1   unreviewed administrative determination. 24 Cal.4th at 74-75.

2       In Johnson, the injured employee filed a grievance with the

3   employer, 24 Cal.4th at 66, and was considered a party to the

4   administrative proceeding, id. at 69-70. Central to the holding

5   was the premise that the employee in question pursued or availed

6   himself of an administrative process that provided an internal

7   remedy and resulted in administrative findings. Id. at 70, 76.

8   The court specified that the context in which this principle

9   applies is where the party or entity whose quasi-judicial

10  determination "is challenged--be it hospital, voluntary private

11  or professional association, or public entity--has provided an

12  internal remedy." Id. at 70 n.2. The court recognized that a

13  plaintiff has a choice of the administrative remedies available

14  and may choose to use the FEHA process instead of civil service

15  remedies. Id. at 72-73. However, if the employee chooses to use

16  the non-FEHA process provided for by the employer, obtains a

17  decision, and fails to pursue a judicial remedy for reviewing the

18  administrative action, then the findings in that administrative

19  procedure should be given binding effect. This is necessary to 1)

20  accord proper respect to the administrative agency's quasi-

21  judicial procedures and to preclude the party from circumventing

22  the established process for judicial review via a petition for

23  administrative mandate; and 2) provide a uniform practice of

24  judicial, rather than jury, review of quasi-judicial

25  administrative decisions. Johnson, 24 Cal.4th at 70.

26      Plaintiff argues that there is a factual dispute regarding

27  whether Plaintiff pursued the administrative remedy before the

28  school board. Review of the evidentiary materials shows that LB

Superintendent Alderete testified at deposition that before September 10, 2003, or on August 13, 2003, during mediation, a mediator told Alderete and others that there was a sexual harassment claim or allegation, but "they" would not tell LB who was involved. LB asked them to tell who was involved and asked to have the complainant come forward. (D.'s Ex. 21 at 27-28, 72.) Alderete wrote a letter to a union representative, Gaulman, dated September 10, 2003, stating in part that at a meeting on September 9, 2003, where several people were in attendance, Gaulman indicated that a female member of the CSEA bargaining unit had experienced sexual harassment from a male supervisor who had repeatedly grabbed his crotch in front of her; Alderete further stated that Gaulman ("You") refused to identify either the complaining witness or the supervisor involved, indicating that the complaining witness feared retaliation. Alderete then formally requested CSEA (the union) and the complaining witness to come forward and file a complaint under the district's sexual harassment complaint procedure so that the district could properly investigate the charges. Alderete attached a copy of the district's complaint procedure to the letter, and he assured Gaulman that the district took all complaints alleging sexual harassment seriously and would ensure that no person filing a complaint would be subjected to retaliation. (D.'s Ex. 26.)

Alderete testified that he first became aware that Plaintiff Veronica Garcia was the person discussed on September 9, 2003, during the "Mejia hearing" before the Board, which was not reported or recorded. (D.'s Ex. 21 at 28.)

Plaintiff testified at deposition that she told Michaela

9

1  Elliott about a masturbation incident several days after it
2  happened, told her union representative, (P.'s Ex. 7, at 92), and
3  told the Board of Education at the time when she was present in
4  regard to Mr. Mejia's complaints; the union did not grieve
5  against Heid because of what he did to her, but because of what
6  Heid did to Mejia, (id. at 109-110); they did not complain about
7  Heid's treatment of Plaintiff because it was up to Plaintiff to
8  complain, and she did not ask her union to complain about it
9  because she did not think it was going to help her; when she went
10 to the Mejia meeting, she did not know that he was going to share
11 about the sexual harassment, but she expected to go as support
12 with information about the incident concerning wiping her ass as
13 consistent with Heid's having been obscene with Mejia, (id. at
14 110-12). Thus, as of early September 2003, it does not appear
15 that there was a formal union grievance requested by Plaintiff.
16 This is consistent with her testimony that she did not take it up
17 before the executive board of the CSEA chapter before the
18 masturbation issue was brought up in front of the Board of
19 Education. (D.'s Ex. 1 at 110, 111, 115.)

20      Thereafter, Plaintiff appeared to lodge a complaint
21 regarding Defendant Heid's treatment of her. It is undisputed
22 that Kaplan was hired to investigate and that Kaplan interviewed
23 Plaintiff and witnesses identified by Plaintiff. (P.'s Stmt. of
24 Evidence, items 2, 3.) Plaintiff testified that she met with Sue
25 Kaplan, Gaulman, and John Puentes, and she identified witnesses;
26 Kaplan took notes and told Plaintiff she was going to write a
27 statement and send it to Plaintiff; and Kaplan wrote a letter to
28 Plaintiff enclosing the statement "as Mr. Gaulman requested."

(D.'s Ex. 1 at 182, 184; D.'s Ex. 29 at 179-80; D.'s Ex. 14.) A letter to Plaintiff from Kaplan dated September 26, 2003, indicates that Kaplan met with Plaintiff on September 25, 2003, about the complaint; union representative Gaulman had requested that Kaplan prepare a statement from the interview to constitute the written complaint under the District's complaint procedure; and Plaintiff was asked to review the statement, make changes, and sign and return. (D.'s Ex. 14.) Plaintiff testified that she understood that pursuant to the district's complaint procedures, she had to submit a written complaint; the district was helping Plaintiff with the complaint. (D.'s Ex. 29, at 180.) Plaintiff discussed the declaration with Gaulman; although Kaplan instructed Plaintiff to make any needed changes, Plaintiff wanted to write her own statement with the changes. (Id. at 181.) Plaintiff did not sign the declaration that Kaplan had prepared. (Id.)

Excerpts of Plaintiff's deposition testimony show that some form of complaint was submitted to Villalta about a month after Plaintiff spoke with Kaplan. Villalta concluded after investigation that the evidence did not substantiate Plaintiff's complaints. (D.'s Ex. 1 at 227.)

Villalta wrote Plaintiff on October 23, 2003, and stated that pursuant to the district's complaint procedure, it was thereby giving written notice of the investigative findings. (D.'s Ex. 5.) Villalta wrote that the district had completed its investigation of Plaintiff's allegations against Heid; her complaints, first raised at a board meeting and later contained in a written statement of her interview with Sue Kaplan on

11

September 23, 2003, were found to have been unsubstantiated given the totality of the evidence. Villalta informed her that she could file a written appeal of the decision to the Board within ten working days of receipt of the letter, which would result in an appeal hearing to be held at the next regularly scheduled board meeting which would fall at least twelve days after the appeal was filed. (D's Ex. 5.) Further, Villalta informed Plaintiff that she also had appeal rights to the State Department of Education. (Id.) Attached to the letter was a copy of the Governing Board's procedures for discrimination complaints, which contained notification that injunctions, restraining orders, and other unspecified civil law remedies might also be available to complainants.

The receipt of the findings and notice are not disputed by Plaintiff, although Plaintiff claims that the findings were gratuitous. (P.'s Stmt., item 4.)

Beginning October 28, Garcia corresponded with Kaplan by e-mail and conversed with her regarding making corrections to her "statement"; Plaintiff sent corrections on October 28. (D.'s Ex. 29 at 227-28, Exs. 30-33.) The corrections relate solely to modifications of an earlier statement. Plaintiff testified that after receiving notice of Villalta's findings, she then wrote Kaplan and sent corrections to her documents. (D.'s Ex. 1 at 227.) In a memo to file dated October 28, 2003, regarding a telephone conversation between Kaplan and Plaintiff on the same date, Kaplan noted that Plaintiff was told that her corrected statement was too late because the investigation had been completed, and that any of her concerns about the process should

1 be taken up with Mr. Villalta. (Id., Ex. 33.) It thus does not

2 appear that this correspondence constituted a lodging of an

3 appeal with the Board; rather, it was an effort by Plaintiff to

4 make changes to the initial complaint. Further, because Kaplan

5 referred Plaintiff to Villalta, it does not appear solely from

6 the contents of this document that Kaplan understood the

7 correspondence to constitute an appeal to the Board by Plaintiff.

8 It is undisputed that a board hearing was held on November

9 19, 2003, at which the Board met in closed session, found that

10 there was no evidence of sexual harassment, and instructed

11 Alderete to advise Garcia, which he did on November 20, 2003.

12 (P.'s Stmt., items 5-7.) It is further undisputed that Garcia did

13 not challenge the Board's findings with the California Department

14 of Education or seek a writ of mandate. (Id. at item 8.) However,

15 Plaintiff argues that this is impertinent because she never filed

16 an appeal with the school board. (P.'s Stmt. at item 8.)

17 At deposition Plaintiff testified that she had submitted a

18 typewritten statement to the Board of Education; she referred to

19 having complained to the Board of Education more than once; and

20 she described her 2003 evaluation by Heid as retaliation for her

21 complaining about incidents (D.'s Ex. 1 at 55-56, 85, 137).

22 However, these deposition excerpts do not specify the stage of

23 the proceedings to which Plaintiff was referring.

24 Plaintiff testified that she went to the Board twice. Once

25 was in reference to the Mejia grievance; the other was in

26 reference to the sexual harassment. The one regarding Mejia was

27 in September 2003, and the sexual harassment charge was in

28 November 2003. (P.'s Ex. 7 at p. 53.) Plaintiff referred to a

13

typewritten statement that she had taken to or in front of the Board of Education. (Id. at 56, 128.) On October 29, 2003, six days after Villalta notified Plaintiff that the investigation resulted in a conclusion that Plaintiff's complaints were unfounded, Plaintiff signed under penalty of perjury a statement to Sue Kaplan in connection with a sexual harassment investigation, which she stated was the basis for her complaint. (D's Ex. 6.) This statement is expressly made to Kaplan, investigator of the complaint (first page), and it seeks removal of the negative evaluation from her file, an apology, and Heid's resignation. It does not refer to a previous investigation or set of administrative findings; it does not expressly purport to be an appeal, as distinct from a correction or confirmation of the initial statement.

Plaintiff testified that she spoke with Kaplan in November about Kaplan's wanting to follow up on an additional comment about Heid having talked about getting even on an evaluation. (P'.s Ex. 7 at 231.) This tends to show that a process regarding the harassment complaint was continuing.

Further, reference to Plaintiff's own representations sheds light on the nature of the proceedings at this point. Plaintiff alleges in the first amended complaint filed in this Court that she lodged a formal complaint pursuant to Defendant district's complaint procedure regarding Heid's sexually offensive conduct, discriminatory treatment, retaliation, and creation of a sexually hostile work environment. (FAC at 4.) Reference to Plaintiff's EEOC complaint (D.'s Ex. 4), dated December 30, 2003, reveals that in a cover letter that Plaintiff wrote to whom it may

concern, Plaintiff stated that the letter from Villalta stating the results of the district's findings caused her to decide to go in front of the Board of Education to raise her complaint. It may be concluded from this direct evidence of Plaintiff's understanding of the procedures and knowledge of the history of her own actions in pursuing a complaint that Plaintiff pursued the district's complaint procedures to the point of filing an appeal with the Board of Education.

In resisting the assertion that Plaintiff pursued the district's complaint procedures, Plaintiff cites to evidence from various sources, including Puentes' testimony that Plaintiff was afraid of retaliation, (P.'s Ex. 21 at p. 44), Plaintiff's testimony that she was afraid of losing her job (P.'s Ex. 23 at p. 47), her testimony that she did not complain about Heid's treatment of her or ask her union to complain about it because she did not think it was going to help her, (P.'s Ex. 7 at 110-111), and the fact that in September 2003 Superintendent Alderete solicited a complaint. This evidence may support a conclusion that Plaintiff was reluctant early in the process, but it does not relate directly to the conduct later in the process. Plaintiff cites to Gaulman's deposition at page 66. (P.'s Ex. 10, at 66, lines 7-9.) Reference to Plaintiff's exhibit 10 does not reveal a page 66; it does contain page 87, which contains Puentes' testimony that at some point Plaintiff had questioned whether she should even have complained about it in the first place but that she was going through a process. This reveals some uncertainty or ambivalence on the part of Plaintiff, but it again does not directly relate to the nature or extent of Plaintiff's

participation in November 2003.

Plaintiff argues that further evidence that Plaintiff did not avail herself of an appeal to the Board is found in Plaintiff's failure to comply with the district's procedures for discrimination complaints. (P.'s Ex. 21.)

Plaintiff first points to her failure to complain informally to her supervisor or summarize her efforts at informal resolution.

Preliminarily, the Court notes that there are several documents regarding procedures. Plaintiff's Exhibit 21 purports to be LB Board policy regarding employee and personnel complaints as well as general guidelines regarding unspecified types of complaints. It specifies that if a complaint involves sexual harassment, it should be made directly to the employee's immediate supervisor; however, an employee is not required to resolve sexual harassment complaints with the offending person. (P.'s Ex. 21 at p. 2, ¶ 2.) Plaintiff's Exhibit 21 as well as Defendant's Exhibit 8 (at p. 1) indicate that if a complaint is related to discrimination, the district's procedure for discrimination complaints should be used. The discrimination complaint procedures were attached to Villalta's letter of October 23, 2003 (D.'s Ex. 5). They indicate that the first step is an informal meeting with an administrator.

In the supplemental brief, Plaintiff appears to argue that a complaint procedure for personnel or employees of the LB is the applicable procedure because Plaintiff refers to steps and time deadlines present in Plaintiff's Exhibit 21 which differ from those in the discrimination complaint procedure. (P.'s Ex. 21.)

However, reference to the guidelines of Plaintiff's Exhibit 21
reveal that the first guideline states that if a complaint is
related to discrimination, the district's procedure for
complaints concerning discrimination should be used. (Id.)
Plaintiff's complaint concerned discrimination on the basis of
sex as well as for harassment or hostile work environment. The
Court concludes that it will thus apply the procedure for
discrimination complaints to Plaintiff's complaint.

The letter of Kaplan dated October 17, 2003, summarizing her
investigation, indicates that because Plaintiff's supervisor was
the alleged harasser, Plaintiff's comments at the Board meeting
were considered to satisfy the informal step. (D.'s Ex. 27 at
Bates pp. 33-34.) This is consistent with the policies of LB and
is not a substantial or significant deviation from the procedure
at the first level under the circumstances. It does not indicate
a failure to pursue the internal remedy. Thus, Plaintiff did not
deviate substantially from the procedure at the first level.

Plaintiff notes her further failure to file a formal written
complaint with her immediate supervisor within sixty days of the
conduct complained of, and the failure of the immediate
supervisor or principal at that step to conduct an investigation,
meet with the complainant to resolve the complaint, and provide a
written answer in ten working days after the meeting. Turning
instead to the procedures for a discrimination complaint, the
procedure requires a complaint to be initiated within thirty days
after the complainant should have known of the alleged
discrimination. The second level requires a formal written
complaint to the district nondiscrimination coordinator within

ten days of the attempt to resolve the complaint informally. It is apparent that both parties considered the complaint at both levels to be timely. As to the deadline for a writing, Kaplan's letter reveals that the parties considered the written statement that Kaplan prepared at Gaulman's request, and which Plaintiff had not yet signed, as a timely formal written complaint. (D.'s Ex. 27 at Bates p. 34.) In order to expedite the investigation, and because the procedure required a written complaint, Kaplan asked Plaintiff to put her complaint in writing at the initial interview of Plaintiff. (D.'s Ex. 6 at p. 2.) The procedure required that the investigation conclude in ten days on the first formal level; Kaplan sought and received permission from Plaintiff for an extension of time to investigate. (Id.) It may be inferred that the parties' various writings document an agreement to extend the time limits by written mutual agreement, as was permitted by the complaint procedure.

Plaintiff also notes the failure of both parties to comply with the formal complaint procedure step 2, which required Plaintiff to file a written complaint with the superintendent or designee within five working days of receiving the answer at step one that includes all information presented at step one, and the Superintendent or designee to conduct any investigation, meet with the complainant, and present all concerned parties with a written answer to the complaint within ten working days after the meeting. Plaintiff also points to step three of the formal complaint procedure, which requires a written appeal to the Board including all information presented at steps one and two, and a report from the superintendent or designee to the Board that

describes the attempts to resolve the complaint at step two. Plaintiff asserts that no report was submitted, and no appeal hearing was held. Again, the Court notes that this argument relates to the more general procedure, not the discrimination procedure.

However, the Court notes that both the discrimination complaint procedures and the complaint guidelines provide for a level of review of the immediate supervisor's or district nondiscrimination coordinator's response to the formal written complaint. This additional level of review, to be completed before an appeal to the Board was undertaken, was not performed or sought. It is possible that the district considered one level bypassed because of the fact that the harasser was the immediate supervisor. Alternatively, it may be that under the discrimination procedure, the superintendent had designated the Board to undertake the next level of review. In any event, it appears that LB considered the next level of review to be an appeal to the Board, which is the final step of review under either complaint procedure. The apparent absence of one level of review is troubling, but it is not sufficient to support a conclusion that the complaint procedure was not pursued by Plaintiff. In light of Plaintiff's admissions that she sought review by the Board, and considering the Board's having held a hearing on November 19, 2003, and having informed Plaintiff on November 20, 2003, that it had denied her complaint of sexual harassment, the Court should conclude that Plaintiff did pursue

to a final decision[1] before the LB Board her complaint regarding Heid's conduct. She thus exhausted the employer's internal remedy.

Citing Schifando v. City of Los Angeles, 31 Cal.4th 1074 (2003), Plaintiff argues that she was not required to pursue any internal remedy offered by her employer. Schifando held that an employee-plaintiff's allegation of exhaustion of FEHA remedies was sufficient to state exhaustion of administrative remedies even though there was no allegation of exhaustion of the employer's internal administrative remedy because it was not necessary for an employee to exhaust both such remedies. In Johnson, however, the employee had pursued both the city's internal grievance procedure as well as FEHA's process, where he was issued a right-to-sue letter. The court held that the civil service findings with respect to the public employee were binding because not set aside judicially. Accord, Risam v. County of Los Angeles, 99 Cal.App.4th 412, 421 (2002); see Page v. Los Angeles County Probation Department, 123 Cal.App.4th 1135 (2005).

Here, Plaintiff not only pursued her FEHA claim, but she also pursued her employer's internal remedy to a final decision

---

[1]Step 3 of the personnel procedure is to file a written appeal to the Board within five working days of receipt of the answer at Step 2. A report is to be submitted to the Board, and an appeal hearing I is held at the next regularly scheduled Board meeting. (D.'s Ex. 10.) Level IV of the discrimination process also consists of the complainant's filing a written appeal to the "Board," which is provided with the information from all previous levels, and which "shall grant the hearing request for the next regular Board meeting for which it can be placed on the agenda." (D.'s Ex. 9.) Both procedures provide that complaints against a district employee must be conducted in closed session as a personnel matter. The Board must render its decision in thirty days of the hearing and must mail its decision to all parties. The Board's decision shall be final. (D.'s Ex. 10.)

The discrimination complaint procedure then expressly provides that complainants may appeal the district's action to the California Department of Education, requires the Superintendent to ensure that complainants are informed that other civil law remedies may also be available, and requires this information to be published with the district's nondiscrimination complaint procedures and included in any related notices, citing to Cal. Ed. Code § 262.3. (D.'s Ex. 9.)

within the internal remedial system. <u>Johnson</u> applies to make the Board's findings binding on Plaintiff. <u>Schifando</u> made it clear that <u>Johnson</u> would apply to prevent an employee from exhausting the employer's internal remedy and then getting a second bit of the "procedural apple." <u>Schifando</u>, 31 Cal.4th at 1090-91.

Citing <u>Lewis v. Superior Court</u>, 19 Cal.4th 1232, 1247 (1999), Plaintiff argues that the procedure of the Board was not a quasi-judicial proceeding because such a proceeding has been defined as an administrative hearing involving a confrontation, oral or otherwise, between an affected individual and an agency decision-maker sufficient to allow an individual to present the case in a meaningful manner. Plaintiff contends that LB's internal complaint procedure was not such a proceeding because Plaintiff lacked counsel at the school board hearing; evidence was suspect because Kaplan, the investigator, was employed by a law firm hired by the school board; and the mere appearance of Plaintiff and witnesses does not mean that Plaintiff sought or requested the hearing.[2]

Cal. Civ. Proc. Code § 1094.5(a), providing for a review of administrative decisions, concerns writs issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, board, or officer.

It has been held that where a complainant is deprived of

---

[2] There appears to be implied an admission that Plaintiff and witnesses appeared at a hearing before the Board. (P.'s Supp. Brief at p. 3, lines 10-14.)

1  notice and a hearing, and is not informed of the reason for the
2  action taken or of the right to respond to the charges against
3  the complainant, it is not a quasi-judicial proceeding. Westlake
4  Community Hospital v. Superior Court (Kaiman), 17 Cal.3d 465,
5  478, 485 (1976). However, no formal judicial process is required;
6  it is sufficient if the procedure identifies a decision-making
7  body and requires it to give full and fair consideration at a
8  hearing. Pomona College v. Superior Court (Corin), 45 Cal.App.4th
9  1716, 1729 (1996) (tenure review decision). Substantive and
10 procedural defects in a quasi-judicial proceeding may be raised
11 in a mandamus proceeding. Westlake Community Hospital v. Superior
12 Court (Kaiman), 17 Cal.3d at 484; Pomona College v. Superior
13 Court (Corin), 45 Cal.App.4th at 1729.

14     Defendant has shown that the procedures in question called
15 for the lodging of a complaint; notice of hearing, of any
16 decision rendered, and of the right to appeal to the next level;
17 submission of all information presented at previous levels to the
18 Board; a hearing at a regular Board meeting; a decision by the
19 Board within ten days; and an appeal thereafter to the state
20 department of education as well as access to other civil law
21 remedies. As previously noted, Plaintiff appears to have admitted
22 that witnesses and Plaintiff appeared before the Board. It may be
23 reasonably inferred and concluded that LB's procedures required a
24 hearing and the taking of evidence, and they vested discretion in
25 the determination of facts in the Board. Thus, the Court
26 concludes that the LB Board's hearing and determination
27 constituted a quasi-judicial proceeding subject to review by
28 administrative mandamus pursuant to § 1094.5.

1    Finally, Plaintiff argues that she is not bound by the

2  Board's findings because LB did not comply with the provisions of

3  Cal. Civ. Proc. Code § 1094.6(f), which states that in making a

4  final decision, the agency "shall provide notice to the party

5  that the time within which judicial review must be sought" is

6  governed by the section, which in § 1094.6(b) imposes a ninety-

7  day statute of limitations after a final decision is rendered. It

8  does not appear that any defendant gave notice to Plaintiff of

9  the ninety-day statute of limitations for filing a petition for

10 administrative mandamus. However, this does not mean that

11 Plaintiff is not subject to the decision. One case held that an

12 employer's decision does not become final unless notice is given.

13 Cummings v. City of Vernon, 214 Cal.App.3d 919, 922 (1989).

14 However, it has been held that § 1094.6(f) means only that absent

15 notice, the strict ninety-day statutory period is tolled, and

16 that instead such a case is governed by the doctrine of laches.

17 El Dorado Palm Springs Ltd. v. Rent Review Commission, 230

18 Cal.App.3d 334, 344-47 (1991) rev. denied, August 29, 1991. This

19 is the better view because it does not insulate decisions from

20 judicial review simply because notice of the statute of

21 limitations is not given. Further, it is consistent with Johnson,

22 24 Cal.4th at 68, where the Supreme Court of California noted

23 that the doctrine of laches, and not the ninety-day time limit

24 expressed in § 1094.6, governed the case because the public

25 agency employer did not notify the plaintiff employee in that

26 case of the ninety-day period.

27    The Court thus concludes that the failure to give notice of

28 the ninety-day period did not render the requirement of

1  administrative mandamus inapplicable to Plaintiff.

2      Where a plaintiff who pursued the employer's internal remedy
3  did not seek review by writ of administrative mandamus to reverse
4  an unfavorable finding with respect to conduct alleged to have
5  violated FEHA, the appropriate remedy is to grant summary
6  judgment because the administrative findings are binding by way
7  of collateral estoppel. Risam v. County of Los Angeles, 99
8  Cal.App.4th 412, 419-20 (2002) (citing Johnson v. City of Loma
9  Linda, 24 Cal.4th 61, 69-70). Collateral estoppel in California
10 bars litigation of an issue decided at a previous proceeding if
11 1) the issue necessarily decided at the previous proceeding is
12 identical to the one sought to be relitigated; 2) the previous
13 proceeding resulted in a final judgment on the merits; and 3) the
14 party against whom collateral estoppel is asserted was a party or
15 in privity with a party at the prior proceeding. Risam, 99
16 Cal.App.4th at 420 (citing Knickerbocker v. City of Stockton, 199
17 Cal.App.3d 235, 243-44 (1988)).

18     Here, the complaints that Plaintiff submitted to Defendant
19 LB were essentially complaints by Plaintiff against Defendant
20 Heid; thus, the same parties are involved. The conduct covered by
21 the complaint included all the factual matters covered by the
22 instant claim, including Heid's yelling and threats in October
23 2002, retaliation for complaining about the yelling, Heid's
24 November 2002 comments regarding wiping Plaintiff's ass,
25 retaliation for complaining regarding that incident, the
26 evaluations, screaming, and the sexual harassment in May 2003.
27 (D.'s Exs. 14, 6.)

28     In summary, the Court concludes that Plaintiff's failure to

24

obtain reversal of the findings of the Board by way of administrative mandamus bars Plaintiff's FEHA action against Heid with respect to the conduct encompassed by the present FEHA claim against Heid.

IV. <u>Summary Adjudication</u>

Defendants LB and Heid move for summary adjudication of the claims involving retaliation, failure to take appropriate action regarding Plaintiff's complaints, and most of the claim concerning sexually hostile work environment except for two incidents of "masturbation" that occurred on May 30, 2003, and January 2, 2004. Defendants argue that the conduct complained of is not actionable under the governing California and federal law, and that much of the conduct cannot be considered because with respect to it, Plaintiff failed to exhaust administrative remedies because the conduct was not set forth in her complaints to the California Department of Fair Employment and Housing (DFEH) and federal Equal Employment Opportunities Commission (EEOC).

A. <u>Exhaustion of Administrative Remedies</u>

1. <u>Title VII</u>

With respect to Title VII, before filing suit on a statutory employment discrimination claim, the aggrieved employee must have exhausted the employee's administrative remedy by filing a timely and sufficient charge with the appropriate administrative agency and obtained a "right to sue" letter. 42 U.S.C. § 2000e-5(b), (f)(3). A failure of exhaustion in the form of a failure to file a timely administrative claim has been characterized as not jurisdictional and may be raised as an affirmative defense to the

1  claim. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393

2  (1982). However, the filing of a sufficient administrative claim

3  that includes the matters forming the basis of a later judicial

4  claim, and the receipt of a right-to-sue letter, have been

5  referred to as jurisdictional pre-requisites to maintaining a

6  Title VII action. McDonnell Douglas Corp. v. Green, 411 U.S. 792,

7  798 (1973) (filing charges with the EEOC and receiving notice of

8  the right to sue are jurisdictional prerequisites to filing a

9  suit in federal court); B.K.B. v. Maui Police Dept., 276 F.3d

10 1091, 1099 (9th Cir. 2002). The purpose of the requirement of

11 administrative exhaustion is to give the charged party notice of

12 the claim and to permit investigation and conciliation by the

13 administrative agency, as well as to narrow the issues for prompt

14 adjudication and decision. Id. A judicial complaint may encompass

15 any discrimination like or reasonably related to the allegations

16 of the EEOC charge. Freeman v. Oakland Unified School District,

17 291 F.3d 632, 636 (9th Cir. 2002) (quoting Oubichon v. North Am.

18 Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973)). A district

19 court's jurisdiction extends to all allegations of discrimination

20 that fall within the scope of either the EEOC's actual

21 investigation or an EEOC investigation that can reasonably be

22 expected to grow out of the charge of discrimination. Freeman,

23 291 F.3d at 636. A district court must inquire whether the

24 original EEOC investigation would have encompassed the additional

25 charges made in the court complaint but not included in the EEOC

26 charge itself. Id. The language of EEOC charges must be liberally

27 construed because the charges are often made by lay people who

28 are not expert in the technicalities of formal pleading; the

1  crucial element of the charge is the factual statement. <u>B.K.B.</u>

2  276 F.3d at 1100. Allegations of discrimination not included in

3  the administrative charge may not be considered by a district

4  court unless the new claims are like or reasonably related to the

5  allegations contained in the EEOC charge. <u>Id.</u> Factors

6  appropriately considered are the alleged basis of the

7  discrimination, dates of the discriminatory acts specified in the

8  charge, perpetrators of discrimination named in the charge,

9  locations at which discrimination is alleged to have occurred,

10  and the extent to which the judicial claims are consistent with

11  the Plaintiff's original theory of the case. <u>Id.</u>

12      It is undisputed that Plaintiff filed her DFEH complaint on

13  January 5, 2004; she filed her EEOC complaint on February 24,

14  2004. It is undisputed that Plaintiff's DFEH/EEOC complaint

15  stated the following:

16      In March 24, 2003, I was subjected to retaliation.
        In May 2003, I was sexually harassed. I was hired
17      April 23, 2001.
        I. I believe I was subjected to retaliation in the
18      form of being issued a poor performance evaluation.
        I also believe I was sexually harassed because of
19      my sex, female. My beliefs are based on the following:
            A. In March 24, 2003, I was issued a poor performance
20      evaluation by Mr. Ray Heid. Investigation will reveal that
        prior to my reporting harassment my performance
21      evaluations were good.
            B. On May 30, 2003, I was visually and verbally
22      sexually harassed by Ray Heid, Facility Director. To my
        knowledge no corrective action was taken.
23
    (P.'s Statement, items 48, 49; D.'s Exs. 4, 16.)
24
25      Thus, reasonably and liberally interpreted, Plaintiff's 2004

26  administrative claims specifically mention good performance

27  evaluations preceding a poor evaluation on March 24, 2003, which

28  was alleged to have been retaliation for previous reporting of

previous, unspecified sexual harassment; visual and verbal sexual harassment on May 30, 2003; and a failure on the part of the employer to take corrective action. The theories involved are sexual harassment, failure to remedy harassment, and retaliation for reporting harassment. The time period encompassed by the express allegations of the administrative claim logically includes the time of the occurrence of the previous, unspecified harassment; the reporting of that harassment, which necessarily preceded March 2003; the allegedly retaliatory performance evaluation of March 2003; the later harassment of May 2003; and any time period after the first report of the sexual harassment during which the employer could have taken corrective action.

The FAC filed here contains things not expressly specified in the administrative claim: 1) pre-evaluation allegations regarding informal complaints with district representatives alleging sexually offensive conduct by Defendant Heid; 2) specifications of additional incidents of Heid's retaliation against Plaintiff (closer supervision, continuing sexually offensive conduct, and conduct intended to ridicule and embarrass Plaintiff, in addition to the unwarranted negative evaluation); 3) sexual discrimination (a continuing pattern of conduct creating a sexually hostile work environment, most recently manifested by the sexually suggestive comments and gestures to Plaintiff on May 30, 2003); and 4) Defendant district's failure to take appropriate action after Plaintiff formally complained, consisting of denying that Heid's conduct amounted to sexual harassment. (FAC at 4-5.)

The informal complaints Plaintiff made about Heid before

1  March 2003 are reasonably understood as the root of the

2  retaliation of which Plaintiff complained and thus were clearly

3  within the scope of the express allegations of the administrative

4  complaint. A reasonable investigation of the claim regarding

5  retaliatory evaluation would have encompassed other acts of

6  arguably retaliatory conduct during the same period. The

7  district's actions in response to the formal complaint were

8  relevant to the related issue of its other actions in response to

9  informal complaints regarding the same conduct, namely, sexual

10 harassment. The pattern of conduct constituting a sexually

11 hostile work environment was part and parcel of the matter

12 investigated, namely, alleged sexual harassment, Plaintiff's

13 complaints about that conduct, the alleged retaliation, and the

14 Defendant district's response to Plaintiff's complaints.

15     In summary, the additional specification in the FAC related

16 to matters that either fell within the scope of the EEOC's actual

17 investigation or an EEOC investigation that could reasonably be

18 expected to grow out of the charge of discrimination. They were

19 like or reasonably related to the allegations contained in the

20 EEOC charge. The alleged basis of the discrimination was the

21 same. The time period of the discriminatory acts specified within

22 the charge largely overlapped the period of the acts stated in

23 the FAC. The perpetrators of the discrimination as well as the

24 general location at which the alleged discrimination took place,

25 as alleged in the administrative complaint, appear to be the same

26 as those involved in the allegations in the complaint. The claims

27 in the complaint are consistent with the Plaintiff's original

28 theory of the case.

The Court concludes that Plaintiff did not fail to exhaust her administrative remedies with respect to claims under Title VII involving retaliation, failure to take appropriate action regarding Plaintiff's complaints, or a sexually hostile work environment.

## 2. <u>FEHA</u>

Previously the Court has concluded that the FEHA action against Heid is barred by collateral estoppel; thus, further issues pertaining to this claim are moot.

However, in case the Court's conclusion is incorrect, the Court notes that result under FEHA would be the same as that under Title VII. With respect to an action under California's FEHA, Cal. Govt. Code § 12960 provides for the filing of an administrative complaint as follows:

(b) <u>Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint</u>, in writing, <u>that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of</u>, <u>and that shall set forth the particulars thereof</u> and contain other information as may be required by the department. The director or his or her authorized representative may in like manner, on his or her own motion, make, sign, and file a complaint. (Emphasis added.)

Under California law, the requirement of exhaustion of administrative remedies under FEHA is a jurisdictional prerequisite to resort to the courts. <u>Johnson v. City of Loma Linda</u>, 24 Cal.4th 61, 70 (2000). It is generally a plaintiff's burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint with the Department of Fair Employment and Housing (DFEH) and obtaining a right-to-sue letter. <u>Westinghouse Elec. Corp. v. County of Los</u>

1  Angeles, 42 Cal.App.3d 32, 37 (1974) (regarding taxpayer duty to
2  establish exhaustion). Failure to exhaust warrants a defense
3  summary judgment. Martin v. Lockheed Missiles & Space Company,
4  Inc., 29 Cal.App.4th 1718, 1724 (1994).

5       As to the requisite level of specificity of an
6  administrative complaint, § 12960 requires that the particulars
7  of the unlawful practice be stated. The policies underlying
8  administrative exhaustion under FEHA are to resolve disputes and
9  eliminate unlawful employment practices by conciliation; the
10 purpose of the administrative charge is to trigger the
11 investigatory and conciliatory procedures of the responsible
12 administrative agency. Okoli v. Lockheed Technical Operations
13 Company, 36 Cal.App.4th 1607, 1615 (1995) (holding that a DFEH
14 complaint regarding specific acts of discrimination based on race
15 and national origin did not suffice to exhaust a claim of
16 subsequent retaliation because of the filing of the charge).
17 Claims in a complaint subsequently filed in court can include the
18 precise unlawful practices mentioned in the DFEH complaint as
19 well as claims like or reasonably related to the DFEH complaint
20 that would be necessarily be uncovered in the course of a DFEH
21 investigation. Id. at 1614-18. This may include new acts
22 occurring during the pendency of the charge before the EEOC.
23 Oubichon v. North American Rockwell Corporation, 482 F.2d 569,
24 571 (9th Cir. 1973).

25      FEHA provisions should be liberally construed for the
26 accomplishment of the purposes thereof, including the resolution
27 of potentially meritorious claims on the merits. Richards v. CH2M
28 Hill, Inc., 26 Cal.4th 798, 819 (2001).

31

1    Here, as set forth at length in connection with the EEOC
2  administrative claim, the new matter in the complaint concerns
3  claims like or reasonably related to the DFEH complaint that
4  would necessarily be uncovered in the course of a DFEH
5  investigation.

6    Thus, in summary, the Court has previously concluded that
7  Plaintiff's FEHA claim is barred by collateral estoppel. However,
8  should such issue be appropriately before the Court, the Court
9  concludes that Defendant has not established that it is entitled
10  to judgment on some aspects of Plaintiff's claims due to any
11  failure on Plaintiff's part to exhaust administrative remedies
12  under FEHA.

13          B. <u>Statute of Limitations</u>

14    Plaintiff filed her DFEH complaint on January 5, 2004; on
15  January 28, 2004, the DFEH sent Plaintiff a notice of case
16  closure because the complaint was waived to another agency
17  (EEOC). (P.'s Ex. 3.) She filed her EEOC complaint on February
18  24, 2004. The EEOC sent Plaintiff a notice of right to sue within
19  ninety days on May 5, 2004. (P.'s Ex. 2.)

20    Defendant argues that all incidents prior to January 5,
21  2003, with respect to the DFEH claim, and before April 2003, with
22  respect to the EEOC complaint, are outside the statute of
23  limitations.

24    Plaintiff notes that when discrimination charges are filed
25  with a state agency in a "deferral state," including California,
26  within 300 days of the occurrence of the employment practice,
27  then the charges are deemed constructively filed with the EEOC at
28  the same time pursuant to a work-sharing agreement between the

32

1  DFEH and the EEOC. 29 C.F.R. § 1626.10(c); <u>McConnell v. General</u>

2  <u>Telephone Company of California</u>, 814 F.1d 1311, 1315-16 (9th Cir.

3  1987). However, pursuant to 42 U.S.C. § 2000e-5(c), the charge

4  cannot be considered "filed" with the EEOC "before the expiration

5  of sixty days after proceedings have been commenced under the

6  State or local law, unless such proceedings have been earlier

7  terminated·." <u>Id</u>. This is because the state agency must be given a

8  sixty-day window in which it has the initial and exclusive right

9  to process the charge, "free from premature federal

10 intervention." <u>EEOC v. Commercial Office Prods. Co.</u>, 486 U.S.

11 107, 110 (1988). The net effect of this sixty-day deferral

12 provision on the 300-day limitations period is that a charge

13 initially filed with a state agency will be treated as

14 constructively filed with the EEOC upon either the expiration of

15 60 days or the termination of agency proceedings, whichever

16 occurs first. <u>See</u> 42 U.S.C. § 2000e-5(c); <u>see also</u> 29 C.F.R. §

17 1601.13(b)(1).

18     Here, the state agency proceedings terminated on January 28,

19 2004, at which time the DFEH charge was deemed constructively

20 filed with the EEOC.

21         1) Title VII

22     Title 42 U.S.C. § 2000e-5(e)(1) requires that a charge be

23 filed within 180 days after the alleged unlawful employment

24 practice occurred, except in cases in which the aggrieved person

25 has initially instituted proceedings with an authorized state or

26 local agency, in which case the charge must be filed within 300

27 days after the alleged unlawful employment practice occurred, or

28 within thirty days after notice of the agency's termination of

1  proceedings, whichever is earlier.

2      The court considered when an unlawful employment practice
3  occurs within the meaning of § 2000e-5(e)(1) with respect to
4  discrete discriminatory acts and hostile work environment claims
5  in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101
6  (2002); it did not consider "pattern or practice" claims, id. at
7  115 n. 9. Subject to waiver, estoppel, and equitable tolling,
8  discrete retaliatory or discriminatory acts each constitute
9  separate, distinct unlawful employment practices, and they occur
10 on the day that they happen, so a party must file a charge within
11 300 days of the date of such an act or lose the ability to
12 recover for it. Id. at 110-11, 113. The mere fact that an
13 otherwise time-barred discrete act is related to acts alleged in
14 timely filed charges is not sufficient to render it actionable.
15 Id. at 113.

16     A hostile work environment (HWE) claim differs from a claim
17 of a discrete act because a HWE claim by its very nature involves
18 cumulative or repeated conduct, and it is composed of a series of
19 separate acts that collectively constitute one unlawful
20 employment practice. Id. at 115, 117. It cannot be said that such
21 an unlawful employment practice occurred on any particular day;
22 indeed, a single act of harassment may not be actionable on its
23 own. Id. at 115. Discriminatory harassment constitutes a
24 particular type of discrimination with respect to the terms,
25 conditions, or privileges of employment mentioned in § 2000e-
26 2(a)(1) that violates the Act where the workplace is permeated
27 with discriminatory intimidation, ridicule, and/or insult that is
28 sufficiently severe or pervasive to alter the conditions of the

34

1  victim's employment and create an abusive working environment.
2  Id. at 116. Determination of the presence of an actionable
3  hostile work environment involves consideration of all the
4  circumstances, including the frequency of the discriminatory
5  conduct, its severity, whether it is physically threatening or
6  humiliating as distinct from merely offensive, and whether it
7  unreasonably interferes with an employee's work performance. Id.
8  at 117. As long as an act contributing to the claim occurs within
9  the filing period, some of the component acts of the HWE practice
10 may fall outside the statutory time period, and a court may
11 consider the entire time period of the hostile environment for
12 the purpose of determining liability. Id. at 117. The employer
13 may be liable for all acts that are part of the claim so long as
14 at least one act within the statutory period is related to the
15 others or is part of the same HWE practice. Id. at 118, 120. It
16 has been held that actions were all part of the same actionable
17 HWE practice where there was no intervening act of the employer,
18 and all the component acts involved the same type of employment
19 actions, occurred relatively frequently, and were perpetrated by
20 the same managers, such as where managers made racial jokes, used
21 racial epithets, performed racially derogatory acts, and made
22 negative comments regarding the capacity of blacks to be
23 supervisors. Id. at 120. The remedy for delay in filing with the
24 EEOC in such a case is to afford the defendant employer equitable
25 defenses, such as laches. Id. at 121.

26     Defendant argues that the acts alleged in Plaintiff's case
27 are simply discrete discriminatory acts and not incidents in a
28 larger HWE practice. Defendant cites Porter v. California Dept.

1  of Corrections, 383 F.3d 1018, 1027-28 (9th Cir. 2004), which the

2  Court notes was superseded upon denial of rehearing by the

3  opinion at 419 F.3d 885 (9th Cir. 2005). Porter establishes that a

4  HWE claimant to survive summary judgment must show 1) the

5  complainant was subjected to verbal or physical conduct of a

6  sexual nature; 2) the conduct was unwelcome; and 3) the conduct

7  was sufficiently severe or pervasive to alter the conditions of

8  her employment and create an abusive work environment. 419 F.3d

9  at 892 (citing Vasquez v. County of Los Angeles, 349 F.3d 634,

10  642 (9th Cir. 2003)).

11     Here, Plaintiff alleged sexual discrimination (presumably of

12  the HWE variety as distinct from quid pro quo), including pre-

13  evaluation, informal complaints with district representatives

14  alleging sexually offensive conduct by Defendant Heid; additional

15  incidents of Heid's retaliation against Plaintiff, including

16  closer supervision, continuing sexually offensive conduct,

17  conduct intended to ridicule and embarrass Plaintiff, and the

18  unwarranted negative evaluation; sexual discrimination consisting

19  of a continuing pattern of conduct creating a sexually hostile

20  work environment, most recently manifested by the sexually

21  suggestive comments and gestures to Plaintiff on May 30, 2003;

22  and Defendant district's failure to take appropriate action after

23  Plaintiff formally complained, consisting of denying that Heid's

24  conduct amounted to sexual harassment.

25     Plaintiff's statement of evidence controverting Defendant's

26  statement of undisputed fact and Plaintiff's statement of

27  undisputed facts reveal that although there may be disputes as to

28  the truth of Plaintiff's evidence, Plaintiff offers evidence of

numerous incidents of conduct on the part of Defendant Heid at
the workplace of varying severity, including frequent raising of
his voice at Plaintiff in front of others, (P.'s Ex. 7 at 44);
yelling at Plaintiff on October 3, 2002, about a mistake in an
advertising bid, (id. at 186); screaming at her when he was
looking for a document and approaching her with clenched fists on
October 8, 2002, causing Plaintiff to believe that he was going
to hit her, (id. at 128, 140-42); a month or so later throwing a
document at Plaintiff and making obscene comments, (id. at 45);
asking her on October 31, 2002, if she wiped her ass when she
went to the bathroom and then telling her to do so, (P.'s Ex. 7
at 112); becoming angry and telling Plaintiff that he could chew
her ass on or about November 19, 2002, (id. at 201); frequent
adjusting of his penis, (P.'s Ex. 7 at 84-86, and admitted,
Plaintiff's Ex. 5 at 23-24); Heid's barely speaking to Plaintiff
as of November 2002 or using rude gestures after Plaintiff
reported him for the second time, (P.'s Ex. 7 at 67-68, 183-84);
being upset with Plaintiff and telling only Plaintiff that she
was late returning from lunch when the other employees were also
late in December 2002, (id. at 203); looking at Plaintiff with
hatred, (id. at 68); yelling at Plaintiff about a missing
labelmaker, (id. at 184, 186); leaning over Plaintiff's desk and
commenting on May 30, 2003, that her pants looked good on her,
gasping or inhaling, and mimicking masturbation, (P.'s Ex. 7 at
88-90); mocking Plaintiff in December 2003 after she went to the
Board by putting in her box a letter that was complimentary to
him, (id. at 71); and Heid's mocking her and mimicking
masturbation during a work conversation with Plaintiff on January

2, 2004, (P.'s Ex. 13, 7 at 68-70). Plaintiff also submitted deposition testimony tending to show that this conduct had a seriously deleterious effect on her emotional and physical health. (P.'s Ex. 7 at 12-16, 41-44, 213-25.)

The Court concludes that these continuous, relatively severe, and potentially sexually discriminatory acts committed by one supervisor constitute a series of separate acts that collectively constitute one unlawful employment practice, and further, that there is evidence that at least one of the incidents of sexually harassing conduct occurred within the statutory period. This case is not like Porter, in which discrete acts by some people, unrelated in time and character, may be considered distinct from other discrete acts. The Court rejects the argument that the statute of limitations bars recovery for sexually harassing conduct in the form of a HWE that preceded April 2003.

2. FEHA

Again, the Court has previously determined that the FEHA claim is barred by collateral estoppel. However, in an abundance of caution, the Court notes that should the issue appropriately be before it, then the result is essentially the same under FEHA as under Title VII because of the more liberal continuing violations doctrine applicable to FEHA claims.

Cal. Govt. Code 12960(d) provides a one-year statute of limitations:

> No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred....

With tolling provisions not applicable here, Cal. Govt. Code §

12965 provides that a right-to-sue letter or notice shall issue to the claimant upon the completion of the investigation, the absence of an accusation within 150 days after the filing of a complaint, or upon the department's earlier determination that no accusation will issue. The notices indicate that the claimant may bring a civil action within one year of the date of the notice. Id.

FEHA provides that no complaint for any violation of its provisions may be filed with the Department "after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred," with an exception for delayed discovery not relevant here. Cal. Govt. Code, § 12960. The limitations period begins to run after the unlawful employment practice occurs. Romano v. Rockwell International, Inc., 14 Cal.4th 479, 492-93 (1996). Analysis of HWE claims under FEHA with respect to the statute of limitations is more favorable to Plaintiff because under FEHA, the California courts recognize a "continuing violations" doctrine such that an employer's persistent failure to eliminate a hostile work environment is a continuing violation if the employer's unlawful actions are 1) sufficiently similar in kind to those within the statutory period; 2) have occurred with reasonable frequency (recurring rather than isolated); (3) and have not acquired a degree of permanence in the sense that an employer's statements and actions make clear to a reasonable employee that any further efforts to end harassment will be futile. Richards v. CH2M Hill, Inc., 26 Cal.4th 798, 823-24 (2001). Here, the acts were sufficiently similar in kind, appear to have been reasonably frequent, and had

39

not acquired permanence before the statutory period. The Court concludes that Defendant has not established that portions of Plaintiff's HWE claim occurring beyond the statutory period are barred by the FEHA statute of limitations.

### C. Sexual Harassment

Defendant argues that summary adjudication should be granted as to all allegations of sexual harassment except the "masturbation" allegations of May 30, 2002, and January 2, 2004, which are disputed and which, if sustained, would constitute sexual harassment. Defendant contends that Heid's other conduct was sex-neutral hostile conduct.

Under Title VII, discrimination with respect to compensation, terms, conditions, or privileges of employment "because of such individual's... sex" is prohibited. 42 U.S.C. § 2000e-2(a)(1). The distinction between quid pro quo harassment (where threats are carried out, or a term or condition of employment is actually affected) and hostile work environment (HWE) harassment (where bothersome attention, sexual remarks, or offensive conduct in general are sufficiently severe or pervasive to create a hostile work environment) is relevant with respect to the extent of the employer's vicarious liability and defenses thereto. It is also relevant to a threshold question of whether or not a plaintiff can prove discrimination in violation of Title VII. The Supreme Court has stated:

> When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. For any sexual harassment preceding the employment decision to be actionable,

40

1  however, the conduct must be severe or pervasive.
2  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753-54
3  (1998). To state a prima facie case for HWE sexual harassment
4  under either Title VII, the plaintiff must allege that 1) the
5  plaintiff was subjected to unwelcome sexual advances, conduct, or
6  comments, 2) the harassment was based on sex, and 3) the
7  harassment was so severe or pervasive as to alter the conditions
8  of the victim's employment and create an abusive working
9  environment. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57,
10  64-68 (1986).

11      Here, although a number of Plaintiff's factual allegations
12  are disputed, the disputed and undisputed facts reflect that
13  Plaintiff worked for LB as an accounting technician and
14  experienced Heid's raising his voice and getting upset. After she
15  complained, Heid yelled at her in an upset fashion, as distinct
16  from merely raising his voice; he got upset with men and women,
17  and raised his voice, as distinct from yelled, at both men and
18  women. (D's Ex. 1 at 129.) He had given her evaluations that
19  required some improvement on her part. (Id. at 168-71.) Heid
20  became very upset with Plaintiff on or about October 3, 2002; he
21  yelled at her and raised his arm in a way that caused her to
22  believe that Heid intended to hit her on or about October 8,
23  2002, which was followed by an apology and card, and Plaintiff's
24  report to Heid's Superior, Elliott, who verbally admonished Heid.
25  (D.'s Exs. 3, 1 at 141-44.) Plaintiff continued to feel
26  physically threatened, nervous, really upset, and afraid. (Id. at
27  145.) She did not consider his losing his temper to be sexual
28  harassment, and did not consider the incidents of yelling before

1  that to be such; he was merely a poor manager and a rude man.
2  (D.'s Ex. 1 at 145-46.) He had several times told her that she
3  looked nice, and she was not offended. (Id. at 163.) Then on or
4  about November 7, 2002, Plaintiff made a mistake on a document,
5  and Heid made fun of her and asked her if she had wiped herself
6  after she went to the restroom, and instructed her to do so; he
7  threw a document at her; it upset Plaintiff, who considered it to
8  be sexual harassment and reported the incident to Elliott. (Id.
9  at 149-51; P.'s Ex. 7 at 45.) Heid thereafter was rude to her,
10 looked at her with hatred, used a bad tone of voice, did not
11 answer her greetings, was kind to others but barely spoke to her,
12 and often raised his voice. (D's Ex. 1 at 182-84, P.'s Ex. 7 at
13 68.) On or about November 19, 2002, he criticized her about a
14 mistake in an advertisement for a bid and told her he was going
15 to chew her ass. (D.'s Ex. 1 at 201.) She perceived that he
16 singled her out for criticism and was upset with her for being
17 late, but he did not criticize others who were also late, in
18 December 2002. (Id. at 202-04.) In December 2002, Heid was upset
19 with Plaintiff for having someone else sign forms while Heid was
20 out of town, and he was upset with Plaintiff for obtaining advice
21 from another person and using a credit card to obtain merchandise
22 that was on sale for only a day when Heid was out of town. He
23 accused her of blaming others when different printers caused
24 reports to line up differently (Id. at 207-11.) He required
25 Plaintiff to work with a bus driver who was on light duty and who
26 was rude, but he allowed others their wishes not to work with
27 her. (Ex. 3.) He gave Plaintiff the negative performance
28 evaluation in March 2003. (Id. at 214.) He yelled at her on or

42

about April 30, 2003, when asking for a label maker that someone
else had; he also got very angry and told her that she was very
bad at her job because she allowed a vacuum cleaner to be
purchased with modernization funds. (Ex. 3.) He regularly sent
work back as unacceptable, something was wrong every month, and
Elliott caught the mistakes. (D.'s Ex. 1 at 211.) Plaintiff
believed the unfavorable evaluation of March 24, 2003, was
unjustified and was in retaliation for her complaints about the
incidents in 2002. (Id. at 137.) Plaintiff testified that Heid
mimicked masturbation in her presence on May 30, 2003, while
leaning over her desk after sucking in his breath and commenting
how good she looked in her pants. (Id. at 91-92, P.'s Ex. 1 at
88-91.) She also testified that during a conversation when most
of the workers were gone from the office, Heid played with his
privates with his head going up and down in January 2004. (P.'s
Ex. 7 at 73-75, 80-83.) Plaintiff also claimed, and Heid did not
deny, that Heid continually adjusted his private parts all the
time, which she ignored. (D.'s Ex. 1 at 84-85.) Others noted that
Heid did that all the time. (P.'s Ex. 7 at 85.) Plaintiff
testified that others believed that Plaintiff should not have to
take Heid's bad treatment of her. (P.'s Ex. 7 at 185-86.)

Plaintiff admitted some mistakes at work but believed she
was a good employee; she also testified that her stress from
Heid's conduct, computer program and software problems, and
overwork contributed substantially to her making mistakes. (P.'s
Ex. 7 at 137, 202, 213-216.) Elliott confirmed that the workload
was high until 2003. (D.'s Ex. 20 at 88.) Plaintiff had
previously received evaluations that she was effective and met or

exceeded standards. (P.'s Ex. 15.) Elliott thought that Heid should have given Plaintiff a worse evaluation, and she thought that Plaintiff's work was inaccurate and could not be corrected. (D.'s Ex. 20 at 132, 41-50, 79-81.)

Plaintiff made inconsistent statements to her sister about her boss being a nice boss, and she failed to tell her husband, sister, or Elliott about the May 2003 masturbation incident, but she told John Puentes and Rod Gaulman of the CSEA union; she ultimately talked about it with her husband and sister later after she talked to the Board on September 11, 2003. (D.'s Ex. 1 at 91-94, 115, 191-92.) Plaintiff admitted that in 2003 a lot of people in CSEA were upset with Heid because he swore and yelled, using abusive language; the matter was discussed at executive board meetings. (D.'s Ex. 1 at 107-110.) John Puentes, groundskeeper for LB and union job steward, testified to problems with Heid verbally harassing or using profanity with Darren Mariani after a meeting a couple of times; yelling or screaming at Margaret Gomes, a confidential employee, about documents not being ready, telling her that he would get rid of her, and enjoying it, which he manifested by making hand gestures to others that indicated that he had "got her"; chewing out Brian Daguerre, with whom Heid did not get along, by accusing him of having called OSHA; using profanity to contractors at the site in several meetings by saying things such as "You got to fucking be kidding me," and yelling or swearing at just about everybody depending on his mood. (D.'s Ex. 25 at 10-19.) Plaintiff testified that Heid did not often yell at Gomes. (P.'s Ex. 7 at 128.)

1   Mejia testified that Heid swore at construction guys in a
2   joking, back-and-forth exchange. (D.'s Ex. 23 at 13.) Heid
3   contacted Mejia on the radio and told him to move his equipment;
4   Mejia replied that he was on his break and would move after the
5   break, and Heid shouted over the radio something like, "When I
6   tell you to fucking do something you damn well better do it."
7   This was overheard by a lot of people. Mejia thought Heid needed
8   an anger management class because that is what Mejia would have
9   had to do if he had done it to Heid. Mejia took it to the union
10  and was contacted by Villalta and Elliott. Heid apologized to
11  Mejia once in private and once in front of four of five other
12  men. The union continued to process the matter to the school
13  board. Mejia thought the union took it out of proportion because
14  all he really wanted was a sincere apology. (D.'s Ex. 23 at 13-
15  28.)

16   The law is established. Discrimination "because of" sex can
17  be found even if the person committing the discriminatory act is
18  the same sex as the plaintiff; the critical issue is whether
19  members of one sex are exposed to disadvantageous terms or
20  conditions of employment to which members of the other sex are
21  not exposed. Oncale v. Sundowner Offshore Services, Inc., 523
22  U.S. 75, 80 (1998). To support an inference of discrimination on
23  the basis of sex, it is not necessary that the challenged conduct
24  involve explicit or implicit proposals of sexual activity or use
25  of sex-specific and derogatory terms, or that it be motivated by
26  sexual desire. It can be sufficient to introduce comparative
27  evidence of how the alleged harasser treated members of both
28  sexes in a mixed-sex workplace. Id. at 80-81. The standard to be

45

1  met is establishing conduct that is sufficiently severe or
2  pervasive such that a reasonable person in the plaintiff's
3  position would find the environment hostile or abusive in light
4  of the context of all surrounding circumstances. Id. at 81-82.
5  There need not be diagnosed psychological injury; what is
6  required is that the hostile conduct pollute the victim's
7  workplace, making it more difficult for her to do her job, take
8  pride in her work, or desire to stay on in her position. Steiner
9  v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir.1994).

10      Although some evidence here warrants an inference that some
11  of Heid's conduct (raising his voice and using profanity) was
12  directed to both men and women, or to virtually everyone at the
13  workplace, the evidence likewise warrants an inference that
14  Plaintiff, a woman, was subjected to this conduct more often and
15  more intensely than male employees or contractors were, and that
16  the treatment of Plaintiff was more severely abusive, as distinct
17  from bantering or joking in tone. A reasonable trier of fact
18  could conclude that the non-masturbation abuse of Plaintiff was
19  part and parcel of a practice of harassment directed to Plaintiff
20  because of her sex, and that it was not simply sex-neutral,
21  hostile conduct. In view of the necessity of drawing all
22  reasonable inferences possible in favor of the non-moving party,
23  it is not for this Court to sever out the incidents that clearly
24  reflect sex-based content, or to resolve issues of fact regarding
25  the severity or intensity of Heid's abuse of Plaintiff. See
26  Steiner v. Showboat Operating Co., 25 F.3d at 1463 n. 4.

27      The mere fact that Heid abused others does not entitle
28  Defendant to summary adjudication of the HWE claim. This is

46

because it may be inferred that the abuse of Plaintiff, a female, was different because it was more frequent, severe, and sometimes involved sexual content, such as offensive references to Plaintiff's body and sexual conduct. <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d at 1463-64. Further, a rational trier of fact could infer that Heid's conduct towards Plaintiff was offensive and hostile to a reasonable woman.

<u>EEOC v. National Education Association</u>, 422 F.3d 840 (9th Cir. 2005), cited by Defendant in its reply brief, does not change this analysis. There the Ninth Circuit was faced with conduct directed at female employees in combination with an absence of direct evidence (facial or overt sex- or gender-specific content, such as sexual language, sex or gender stereotypes, or sexual overtures) that the conduct was because of sex. The court concluded that the supervisor's angry outbursts and physically threatening and hostile conduct (standing over female employees, shaking fists at them, and loud and hostile shouting) could constitute discrimination because of sex if there was direct comparative evidence about how the alleged harasser treated members of both sexes, and there was a basis for an inference that a pattern of abuse was directed at women. The court concluded that although there was abuse of both men and women in the workplace, the supervisor's abuse of women was objectively different because it was more severe and relied on sexual epithets, offensive and explicit references to women's bodies, and sexual conduct, and because it had a subjectively different effect on the females. Specifically, the court noted that raising voices to male employees was less frequent, they

1  could talk it out, and it was of a more bantering, joking

2  character.

3       Here, the evidence warrants an inference that the treatment

4  of Plaintiff was different from the verbal abuse directed at

5  males, was more overtly sexual, was accompanied by overtly sexual

6  conduct, and was more severe and frequent than that directed at

7  the others.

8       The Court has previously concluded that the FEHA claim is

9  barred because of collateral estoppel. However, in an abundance

10 of caution, should the issue appropriately be before the Court,

11 the Court notes that the result would be the same with respect to

12 FEHA as under Title VII.

13      FEHA prohibits a variety of unfair labor practices including

14 discrimination "in terms, conditions or privileges of employment"

15 on the basis of sex. Cal. Govt. Code § 12940, subd. (a). Cal.

16 Govt. Code § 12940, subdivision (h)(1) makes it unlawful for an

17 employer, because of "sex, to harass an employee or applicant."

18 Under FEHA, the federal definition is adopted, and the elements

19 of HWE sexual harassment are: 1) the plaintiff belongs to a

20 protected group; 2) the plaintiff was subject to unwelcome sexual

21 harassment; 3) the harassment complained of was based on sex; 4)

22 the harassment complained of was sufficiently pervasive so as to

23 alter the conditions of employment and create an abusive working

24 environment; and 5) respondeat superior. Fisher v. San Pedro

25 Peninsula Hosp., 214 Cal. App.3d 590, 608 (1989); Beyda v City of

26 Los Angeles, 65 Cal.App.4th 511, 516-18 (1998).

27      Heid's conduct towards Plaintiff would constitute HWE

28 harassment under California law as well, which proscribes sexual

48

1  harassment, which is defined as "verbal, physical, or sexual

2  behavior directed at an individual because of her, or his,

3  gender," and includes, but is not limited to, conduct which is

4  verbal (such as epithets, derogatory comments or slurs), as well

5  as physical and visual insults. Flait v. North American Watch

6  Corp., 3 Cal.App.4th 467, 476-77 (1992).

7       In summary, the Court finds that Defendant is not entitled

8  to summary adjudication on Plaintiff's HWE claim of sexual

9  harassment under Title VII.

10              D. Retaliation Claim

11       Defendant argues that Plaintiff's retaliation claim for

12  having complained about the yelling incident and the "wipe

13  yourself" comment in October 2002 fails as a matter of law

14  because 1) Plaintiff did not engage in protected conduct when she

15  complained about Heid's conduct, which was not sexual harassment;

16  2) the allegedly unjust evaluation of March 24, 2003, was not an

17  adverse employment action under FEHA; 3) Defendant has

18  established that there is no issue of material fact with respect

19  to its having shown that it had a non-retaliatory reason for the

20  negative performance evaluation; and 4) any claimed retaliatory

21  conduct beyond the negative performance evaluation exceeds the

22  scope of Plaintiff's administrative complaints.

23       Under Title VII, an employer may not take any adverse

24  employment action against an employee who has opposed any

25  practice made unlawful by Title VII or made a charge, testified,

26  assisted, or participated in any manner in any investigation,

27

28

1  proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a).[3]

2      The McDonnell Douglas burden-shifting framework applies to

3  retaliation claims under FEHA and Title VII. <u>Stegall v. Citadel</u>

4  <u>Broadcasting Co.</u>, 350 F.3d 1061, 1065-66 (9th Cir. 2003); <u>Flait v.</u>

5  <u>North American Watch Corp.</u> 3 Cal.App.4th 467, 475-76 (1992). The

6  employee must establish a prima facie case by showing that the

7  employee engaged in a protected activity, his employer subjected

8  him to adverse employment action, and there is a causal link

9  between the protected activity and the employer's action.

10  <u>Stegall</u>, 350 F.3d at 1065-66; <u>Akers v. County of San Diego</u>, 95

11  Cal.App.4th 1441, 1453 (2002). Then the employer has the burden

12  to articulate a legitimate, non-retaliatory reason for the action

13  taken. The employee then bears the ultimate burden of

14  demonstrating that any such reason was merely a pretext for a

15  discriminatory motive, and that the retaliation was intentional.

16  <u>Stegall</u>, 350 F.3d at 1066; <u>Akers v. County of San Diego</u>, 95

17  Cal.App.4th at 1453.

18      In connection with Defendant's contentions regarding the

19  scope of this action in the context of administrative exhaustion,

20  the Court has previously confirmed the propriety of including

21  within the retaliation claim before the Court not only the

22  negative work evaluation in March 2003, but also other acts of

23

24      [3] The Court has previously found that Plaintiff's FEHA claim is barred

25  by collateral estoppel. However, in an abundance of caution, the Court notes that should the retaliation claim under FEHA appropriately be before the Court, Cal. Govt. Code § 12940(j) (2000) states that it is an unlawful

26  employment practice, unless based on a bona fide occupational qualification or security regulations of the state or of the United States, for "any

27  employer... or person... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden

28  under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

continuing retaliation during that period constituting HWE harassment that were set forth in the FAC. These acts include continuing sexually offensive conduct and other conduct intended to ridicule and embarrass Plaintiff.

Plaintiff alleged and provided evidence reasonably warranting an inference that she complained to Elliott, Heid's superior, about Heid's sexually derogatory "ass wiping" remark and his having yelled at her and raised his fist in a physically threatening way. Title VII and FEHA protect an employee who has opposed any practice made unlawful by Title VII or forbidden by FEHA. As previously noted, sexual harassment is a forbidden form of sex discrimination under both statutes. Plaintiff has thus provided evidence from which it may be concluded that she engaged in a protected activity by complaining about sexual harassment.

As previously set forth at length, Plaintiff alleged and provided evidence warranting an inference that she suffered a series of retaliatory acts thereafter, including the negative performance evaluation of March 2003, consistently negative comments, continuing sexually offensive conduct, and rude and hostile behavior. The negative performance evaluation can constitute an adverse employment action under Title VII. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (transfers of job duties and an allegedly undeserved negative performance rating). It may reasonably be inferred that the continuing course of conduct in May 2003 and thereafter was conduct motivated by a retaliatory motive and reasonably likely to deter an employee from engaging in protected activity. Ray v. Henderson, 217 F.3d 1234, 1242-43 9th Cir. 2000); Porter v. California Department of

1  *Corrections*, 419 F.3d at 895-96; <u>Elvig v. Calvin Presbyterian</u>

2  <u>Church</u>, 375 F.3d 951, 965 (9th Cir. 2004) (sexual harassment).[4]

3       Again, should the Court have erred in its conclusion that

4  collateral estoppel bars Plaintiff's remaining FEHA claim, then

5  the Court will set forth its reasoning regarding the FEHA claim

6  in the interests of the efficient administration of justice.

7  Although the California Supreme Court granted a hearing in <u>McRae</u>

8  <u>v. Department of Corrections</u>, 127 Cal.App.4th 779 (2005), on

9  which Defendant relies, the court has nevertheless held that a

10 series of allegedly harassing and discriminatory acts (HWE)

11 preceding and postdating the statutory limitations period,

12 including a negative performance evaluation and conduct

13 humiliating to the employee, may constitute an adverse employment

14 action when, considering all the circumstances, it materially

15 affects the terms, conditions, or privileges of employment such

16 that it is reasonably likely to impair a reasonable employee's

17 job performance or prospects for advancement or promotion.

18 <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal.4th 1028 (2005).

19      Because it appears that Heid and Elliott knew of Plaintiff's

20 complaints, and because of the relatively short period of time

21 within which the course of harassing conduct was undertaken,

22 Plaintiff has established a causal connection between the earlier

23 complaints and the later retaliatory conduct.

24      The evidence set forth by Defendant warrants a reasonable

25 inference that Defendant had a non-retaliatory reason for its

26 _____

27      [4] The fact that the negative performance evaluation itself arguably preceded the statutory limitations period does not vitiate the prima facie showing because Plaintiff complains of a series of similar acts closely related in time

28 and performed by the same supervisor, which together were substantially deleterious with respect to Plaintiff's work environment.

actions, namely, performance deficiencies in Plaintiff's work
perceived by both Elliott and Heid. However, despite previously
documented deficiencies in Plaintiff's work, Plaintiff had not
received negative overall performance evaluations before her
complaints about harassment. (P.'s Ex. 15.) Indeed, even though
Elliott had believed Plaintiff was inadequate, had heard
complaints about Plaintiff, and had not wanted Plaintiff promoted
to the account technician position from account clerk, Plaintiff
had been promoted, and Elliott reviewed her work. Plaintiff also
produced evidence warranting a reasonable trier of fact in
concluding that overwork, stress caused by Heid's abusive
conduct, Heid's unwillingness to communicate with Plaintiff, and
computer defects or problems contributed significantly to the
problems with Plaintiff's work; coupled with the evidence of
Heid's continuing abusive conduct and increased negative
scrutiny, and drawing all reasonable inferences in favor of the
non-moving party, a rational trier of fact could conclude that
the true reason for the negative evaluations of Plaintiff was
retaliation for having complained of Heid's earlier harassment,
and that the harassment was because of sex. Cf. <u>Yanowitz v.
L'Oreal USA, Inc.</u>, 36 Cal.4th 1028, 1144 (citing <u>Hairston v. The
Gainesville Sun Publishing Co.</u>, 9 F.3d 913, 921 (11th Cir. 1993)).

   The Court concludes that Defendant is not entitled to
summary adjudication on the retaliation claim.

          E. <u>Corrective Action</u>

   With respect to Title VII, Plaintiff claims that LB failed
to take prompt corrective action regarding her complaint about

1  Heid's alleged masturbation conduct on May 30, 2003.[5]  Defendant

2  argues that it undertook an investigation as soon as it became

3  aware of Plaintiff's allegations by hiring Kaplan, responding

4  through Villalta, and holding a full hearing before the Board of

5  Trustees. Defendant asserts that it cannot be faulted for not

6  imposing discipline because its investigation resulted in a

7  finding of insufficient evidence of harassment.

8      Plaintiff argues that Heid and Elliott, an assistant

9  superintendent and senior executive of LB, knew of harassment as

10  far back as October 2002. This does not pertain to Plaintiff's

11  claim in the complaint, which is that Defendant district failed

12  to take appropriate action after Plaintiff formally complained of

13  Heid's conduct because the district found that the evidence did

14  not support Plaintiff's complaint.

15      With respect to Plaintiff's allegation that the district

16  failed to take appropriate action after Plaintiff formally

17  complained about the May 30, 2003 masturbation incident, Title

18  VII defines an employer to include any agent of an employer, 42

19  U.S.C. § 2000e(b), which means that discriminatory conduct by an

20  employer's agent may be imputed to an employer generally on

21  agency principles, <u>Burlington Industries, Inc. v. Ellerth</u>, 524

22  U.S. 742, 765 (1998). Supervisors and coworkers who do not

23

24      [5] Defendant expressly limits its argument to the Title VII claim, asserting that any FEHA claim is irrelevant

25  because only Heid is a defendant in the FEHA action, and Heid has no duty to take corrective action. The Court
   expresses no opinion as to any FEHA claim against Heid regarding corrective action because the moving parties do

26  not raise any argument regarding such a claim but merely assume that it does not exist. Because Defendants make no
   motion in connection with any FEHA claim against Heid, Plaintiff's argument that such a claim exists is disregarded.

27  It should be noted that under FEHA, it is an unlawful employment practice for an employer to fail to take all
   reasonable steps necessary to prevent discrimination and harassment from occurring, Cal. Govt. Code § 12940(k);

28  this has in some courts been interpreted to create a statutory tort which, if the employer was indifferent to harassment
   that was separately established, would expose the employer to emotional distress damages.

qualify as employers are not individually liable for violations of Title VII. <u>Miller v. Maxwell's International Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993). Further, sexual harassment by a supervisor is generally not conduct within the scope of the employment because it lacks a motive to serve the employer. <u>Burlington Industries, Inc.</u>, 524 U.S. at 757. However, an employer may be liable for a supervisor's acts if the employer was negligent with respect to the harassment, as where it knew or should have known about the conduct and failed to stop it. <u>Id.</u> at 759. Where a supervisor takes a tangible employment action, such as a denial of a raise or a promotion, the employer is liable. <u>Id.</u> at 761-63. Where there is supervisor harassment without a tangible employment action, the employer may defend if it shows it exercised reasonable care to prevent and correct any sexually harassing behavior, and the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid the harm. <u>Id.</u> at 765-66.

An employer's tolerating sexual harassment against its employee adversely changes the terms of the employment in violation of Title VII. <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 923 (9th Cir. 2000). If an employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have adopted the harasser's conduct and its results; however, an employer cannot be liable for misconduct of which it is unaware. <u>Swenson v. Potter</u>, 271 F.3d 1184, 1192 (9th Cir. 2001). Upon gaining notice, the employer has a duty to take prompt corrective

1 action that is reasonably calculated to end the harassment. Id.
2 The employer must take temporary steps to determine whether the
3 complaint is justified, and then take permanent remedial steps
4 once it completes its investigation. Id. Separation or minimizing
5 contact is not necessarily required; it depends on the severity
6 of the alleged harassment and the evidence provided to the
7 employer in support of the complaint. Id. at 1192-93. Launching a
8 good faith investigation is the most significant measure to be
9 taken in response. Id.

10      Here, an investigation was promptly launched, and the
11 various steps of the complaint procedure were completed with
12 relatively minimal delay. Witnesses suggested by the Plaintiff
13 were contacted, and Plaintiff was interviewed. Final notice was
14 given in late November. Plaintiff was transferred to another
15 location, but not until January 2004.

16      The evidence warrants an inference that the employer
17 undertook an action in good faith promptly after the September
18 2003 revelation. However, there is also evidence of Heid's long-
19 standing harassment of Plaintiff without effective intervention,
20 the employer's failure to separate Plaintiff immediately after
21 the complaint, and Plaintiff's evidence that in January 2004,
22 when other workers were absent from the office, Heid played with
23 his privates in her presence. This evidence warrants a contrary
24 inference, namely that transfer of Plaintiff should reasonably
25 have been undertaken earlier. It is for the trier of fact to
26 decide the adequacy and significance of the employer's conduct.
27 Accordingly, Defendant has not shown that as a matter of law it
28 is entitled to judgment on the corrective action claim.

V. <u>Disposition</u>

In summary, Plaintiff's FEHA claim against Heid is barred by collateral estoppel for Plaintiff's failure to exhaust judicial remedies to set aside the Defendant Board's negative findings. However, Defendant has failed to show that there is an absence of a triable issue of material fact with respect to Plaintiff's other claims under Title VII.

Accordingly, it IS ORDERED that

1) Defendants' motion for summary judgment or summary adjudication is GRANTED IN PART and DENIED IN PART; and

2) Defendant Heid is entitled to judgment as a matter of law on Plaintiff's claim against Defendant Heid based on FEHA; and

3) Defendant has not shown that it is entitled to judgment as a matter of law on Plaintiff's other claims against Defendant Los Banos Unified School District.

IT IS SO ORDERED.

**Dated:    February 16, 2006**                      **/s/ Sandra M. Snyder**
icido3                                                    UNITED STATES MAGISTRATE JUDGE