UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GARCIA,<br><br>            Plaintiff,<br><br>   v.<br><br>LOS BANOS UNIFIED SCHOOL<br>DISTRICT, et al.,<br><br>           Defendants. | 1:04-CV-6059-SMS<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTIONS IN LIMINE REGARDING<br>EXPERT TESTIMONY AND OPINION<br>EVIDENCE (DOCS. 60, 61) |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

    I. <u>Defendant's Motion to Exclude Opinions and Other Testimony of Plaintiff's Expert M. Anne Juri, M.A., M.F.T.</u> (Doc. 60)

Defendant filed a motion to exclude opinion and other testimony of Plaintiff's expert M. Anne Juri, M.A., M.F.T., on December 5, 2006, including a notice, memorandum, declaration, and exhibits. Plaintiff filed opposition on December 27, 2006, including a memorandum and the declarations of Rey Hassan and expert Anne Juri. The motion was argued on February 6, 2007, by Rey Hassan, counsel for Plaintiff, and Robert Rosati, counsel for

1

Defendant, and the matter was submitted to the Court for
decision.

The motion addresses numerous aspects of anticipated
testimony, which are given twenty numbers in the motion (Mot. pp.
1-3), and it raises multiple grounds for exclusion.

A. <u>Hearsay</u>

Defendant objects on hearsay grounds to testimony and/or
opinions from Juri regarding numerous subjects (1, 2, 3, 4, 5, 6,
8, 9, 10, 11, 13, 14, 15, 17).

With respect to examination of expert witnesses, Fed. R.
Evid. 703 states:

> The facts or data in the particular case upon
> which an expert bases an opinion or inference may be
> those perceived by or made known to the expert at or
> before the hearing. If of a type reasonably relied upon
> by experts in the particular field in forming opinions
> or inferences upon the subject, the facts or data need
> not be admissible in evidence in order for the opinion
> or inference to be admitted. <u>Facts or data that are
> otherwise inadmissible shall not be disclosed to the
> jury by the proponent of the opinion or inference
> unless the court determines that their probative value
> in assisting the jury to evaluate the expert's opinion
> substantially outweighs their prejudicial effect.</u>
> (Emphasis added.)

Fed. R. Evid. 705 states:

> The expert may testify in terms of opinion or
> inference and give reasons therefor without first
> testifying to the underlying facts or data, unless the
> court requires otherwise. The expert may in any event
> be required to disclose the underlying facts or data on
> cross-examination.

Rule 703 as amended in 2000 requires a court asked to admit
otherwise inadmissible evidence to determine whether the facts
are of a type reasonably relied on by experts in the particular
field, and then whether or not the probative value of the

1   underlying data substantially outweighs its prejudicial effect.

2   The evidence is to be admitted only if the Court answers both

3   questions in the affirmative. <u>Turner v. Burlington Northern Santa</u>

4   <u>Fe R. Co.</u>, 338 F.3d 1058, 1061 (9th Cir. 2003) (upholding the

5   trial court's exclusion of inadmissible hearsay used as the basis

6   of opinion where the probative value was minimal and the

7   prejudice from admission substantial). The amendment provides a

8   presumption against disclosure to the jury of information that is

9   used as the basis of an expert's opinion and is not admissible

10  for any substantive purpose, when that information is offered by

11  the proponent of the expert. <u>Id.</u> at 1062.

12       Here, some of these matters that Defendant seeks to exclude

13  as hearsay concern events or phenomena that Plaintiff apparently

14  had related to Juri, such as family assessment and cultural

15  values, Heid's treatment and/or alleged continued harassment of

16  Garcia after the October 2002 yelling incident and after the May

17  30, 2003, masturbation incident, support for her statements by

18  Garcia's coworkers, a decline in Plaintiff's work performance,

19  instigation by Heid of a poisonous work environment followed by

20  Defendant's doing nothing to correct it, and changes in Garcia's

21  relationship with her husband. Juri apparently considered these

22  matters in reaching her opinion. If these matters were offered

23  for the truth of the matters asserted by Plaintiff in the

24  statements, the evidence would be hearsay. The only apparent

25  reason for admitting such statements would be to explain the

26  basis of the expert's opinion.

27       The treatment that Plaintiff received by Heid and Defendant,

28  and Plaintiff's experience of the effects of this on her marriage

3

1 and other aspects of her life, will presumably be the subject of

2 Garcia's own testimony, so any repetition by an expert in the

3 form of a detailed narrative of the facts would be duplicative.

4 These facts, along with a family history or other biographical

5 information, are of a type reasonably relied on by experts.

6 However, unnecessary repetition of the details of Plaintiff's

7 perception of the events, coworkers' attitudes, and statements

8 would bring very subjective phenomena before the jury and would

9 carry a potential for prejudice in the form of an undue focus on

10 emotional issues and distraction of the trier from the central

11 issues in a case already tending towards evidentiary complexity

12 because of the involvement of several different scenarios of

13 harassment within the workplace.

14     On the other hand, Plaintiff, the source of the information,

15 is subject to cross-examination by Defendant, so the possibility

16 for true prejudice may be limited by cross-examination and by a

17 limiting instruction.

18     However, on balance, the potential for prejudice, confusion,

19 and undue consumption of time outweighs the probative value of

20 the evidence. The Court cautions that Juri shall not summarize

21 the Plaintiff's own statements made to Juri regarding what

22 happened to Plaintiff. Recounting Plaintiff's statements

23 regarding her coworkers' support also will not be allowed because

24 its probative value is substantially outweighed by the potential

25 prejudice.

26     The Court therefore GRANTS Defendant's motion to exclude

27 from the expert's initial testimony Plaintiff's own statements

28 regarding what happened to Plaintiff (as distinct from some more

summary explanation by the expert regarding a course of events related by Plaintiff) and Plaintiff's statements regarding her coworkers' support.

Some of the matters Defendant seeks to exclude are opinions from the expert regarding the effect of various events, such as the October 2002 yelling incident, on Plaintiff, such as that Plaintiff was victimized again by the ineffectiveness of the school district in stopping Heid's behavior; that Plaintiff's relationship with her husband changed as a result of any conduct by Heid or Defendant; that Plaintiff had diarrhea and vomiting during April 2005 during her deposition due to work-related stress; and more generally that Heid's behavior caused Plaintiff psychiatric distress, post-traumatic stress disorder (PTSD), and deeply damaged Plaintiff.

The expert's opinions concerning Plaintiff's condition, including diagnosis, causation of psychological harm, and opinion regarding the nature and extent of the harm caused Plaintiff, is generally within the expert's expertise. It concerns subjects regarding which expert evidence would assist the trier of fact. Of course, there will be some overlap with phenomena that the trier may understand on a common-sense level, such as the fact that conflict at work may cause stress, or physical threats may cause fear, etc. However, the nature and extent of the damages suffered by Plaintiff as a result of the alleged harassment are material issues.

Counsel should take care to question the expert carefully to elicit opinions concerning these matters and not opinions concerning the conduct itself which the expert would opine was

the cause of Plaintiff's damage; it is the condition of the Plaintiff and the effects of any conduct that should be the focus of the inquiry.

The expert has no personal knowledge of the events experienced by Plaintiff, and thus any opinion of the expert as to whether or not Plaintiff was harassed, Heid's alleged treatment of Plaintiff after the yelling incident, whether the school district victimized Plaintiff again, or the motivation of other actors in the workplace, separate and apart from the opinion of the effect of such conduct on Plaintiff, would be inadmissible.

To the extent that it is generally accepted that one person's yelling at another is unpleasant and usually upsetting, the jury most likely would not be assisted by Juri's opinion on this. However, Juri will be allowed to testify that she was told it occurred, Plaintiff was upset by it, and Juri considered the totality of the circumstances in diagnosing Plaintiff.

Other matters involve opinions regarding Plaintiff's subjective state of mind that resulted from the various events, such as Plaintiff's claimed fear of retaliation if she reported Heid, Plaintiff's feeling that she was repeatedly or continually victimized by the district, and Plaintiff's feeling that Heid sensed he was safe from the district to continue to abuse Plaintiff. This type of information is probative of Plaintiff's state of mind as a result of the alleged harassment and of any emotional distress that Plaintiff might have suffered; it relates to her damages. Again, it is expected that Plaintiff herself will testify to her own subjective experience of the treatment she

received from the district; undue repetition of this material
could be prejudicial, particularly if repeated with the imprint
of an expert. However, the expert should be allowed to testify to
her opinion of the perceived psychological damage to Plaintiff
that resulted from the alleged misconduct, and to any fear and
anxiety if they are part and parcel of that damage.

Further, the Court emphasizes that if otherwise inadmissible
evidence is admitted to explain the expert's opinion, then a
limiting instruction should be given to the jury to inform it
that the hearsay evidence is to be considered solely as a basis
for the expert opinion and not as substantive evidence. United
States v. 0.56 Acres of Land, 109 F.3d 1493, 1496 (9th Cir. 1997)
(citing Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261-62
(9th Cir. 1984)). To the extent that any hearsay is admitted, a
limiting instruction should be given.

The Court will evaluate the proffer of this evidence as it
is presented in trial and entertain any objections and
suggestions for limiting instructions at that time.

B. Opinion Evidence regarding Plaintiff's Credibility

Defendant seeks to exclude evidence relating to credibility,
including various opinions concerning the effect of discrete
instances of Heid's misconduct on Plaintiff, opinions regarding
Plaintiff's credibility, whether or not she was telling the truth
(subject matter not further specified) and/or the veracity of
Garcia's claimed reactions, such as fear of retaliation or a
sense that Heid felt free to harass her, the veracity of or the
claimed effects on Garcia of Garcia's allegations that Heid
mimicked masturbation on May 30, 2003, or adjusted himself or

7

1  played with his private parts at other times, and opinions

2  regarding Heid's later treatment of Plaintiff.

3      The Court has previously addressed the inadmissibility of

4  opinions of the expert regarding the conduct of Defendants and

5  the admissibility of opinions relating to the injury caused by

6  the alleged harassment. Further, the Court has addressed the

7  inadmissibility (absent further development of evidence, request

8  by a party, or cross-examination) in general of Plaintiff's own

9  statements as related to the expert.

10     With respect to opinions of the expert as to the Plaintiff's

11  credibility, it is established that because it is the province of

12  the jury to determine credibility, opinions that are nothing more

13  than vouchers for or attacks on credibility (such as that sexual

14  harassment occurred as alleged by the victim) do not assist the

15  trier of fact. United States v. Barnard, 490 F.2d 907, 912-13 (9th

16  Cir. 1973) (upholding, in the absence of unusual circumstances,

17  the trial court's exclusion of the opinion of a psychiatrist and

18  psychologist that a government witness was a sociopath who would

19  lie when it was to his advantage to do so); United States v.

20  Awkard, 597 F.2d 667, 671 (9th Cir. 1979) (error to permit an

21  expert to testify to the ability of a witness to recall a

22  stabbing, and noting that under the Federal Rules of Evidence,

23  opinion testimony on credibility is generally limited to

24  character, and all other opinions on credibility are for the jury

25  to form); United States v. Charley, 189 F.3d 1251, 1267 (10th Cir.

26  1999) (in criminal proceeding concerning sexual abuse, it was

27  held appropriate to admit an expert's statement that the alleged

28  victim's symptoms were consistent with symptoms of sexually

abused children, but error to have admitted statements to the effect that abuse had happened because doing so invaded the province of the jury); United States v. Witted, 11 F.3d 782, 785- (8th Cir. 1993) (in criminal proceeding for sexual abuse of a child, it was held permissible for expert to describe the characteristics exhibited by the alleged victim, summarize the medical evidence, and express an opinion that the evidence was consistent with the victim's allegations of abuse; however, a diagnosis of repeated child sexual abuse was in effect an opinion that sexual abuse was in fact occurring and, whether in the guise of a medical opinion or not, was not useful to the jury and was not admissible); United States v. Azure, 801 F.2d 336, 339-41 (8th Cir. 1986) (error to permit pediatrician to opine as to the truth of the story told by a victim of child sexual abuse [specifically, to testify that the child was believable and that he could see no reason why she would not be telling the truth] because it invaded the province of the jury and exceeded the scope of permissible expert testimony under Rule 792); Nichols v. American National Ins. Co., 154 F.3d 875, 882-83 (8th Cir. 1998) (it was held to be an intrusion into the jury's territory and error to permit a psychiatric expert to testify that the Plaintiff had poor psychiatric credibility or ability to assess the cause of her own state or report her symptoms accurately; further, she had "recall bias" (mistaken ideas regarding her past symptoms), malingered, and was motivated by secondary gain, and the Plaintiff's own psychiatric expert's examination of her had been subject to such weaknesses); but see, United States v. Gonzalez-Maldonado, 115 F.3d 9, 15 (1st Cir. 1997) (finding error

9

1 in the exclusion of an expert's testimony regarding a potential
2 witness's mental illness and its impact on his behavior,
3 including a propensity to exaggerate, where the witness was
4 incompetent and thus did not testify in front of the jury, but
5 the witness's taped statements were introduced, and thus there
6 was a special need for probative evidence regarding the condition
7 in order for the lay jury to be able to determine intelligently
8 the weight to place on the recorded statements); <u>Skidmore v.</u>
9 <u>Precision Printing and Pkg., Inc.</u>, 188 F.3d 606, 618 (5th Cir.
10 1999) (in a sexual harassment case, upholding a trial court's
11 admission of the testimony of a psychiatrist that the Plaintiff
12 seemed genuinely distressed to him, and he did not think that the
13 Plaintiff had lied to him or fabricated her psychiatric symptoms,
14 because it did not constitute testimony that Plaintiff was
15 undoubtedly telling the truth, but rather was in essence
16 testimony that her symptoms and recollections appeared genuine
17 and that he felt that he had not been duped by her).

18     Here, as previously noted, the opinions regarding the effect
19 of the claimed harassment on Plaintiff would be admissible, but
20 opinions regarding whether or not the claimed harassment occurred
21 would be beyond the scope of permissible expert opinion. Opinions
22 regarding Plaintiff's credibility in general would likewise be
23 inadmissible, although there might be, pursuant to <u>Skidmore</u>, some
24 room for the expert to testify to her reliance on Plaintiff's
25 statements to her and her impression that she had not been duped
26 as a basis for her opinion (as distinct from testifying to
27 Plaintiff's overall credibility, or her credibility on the
28 stand). It does not appear that there is any component of

1  Plaintiff's diagnosed condition, PTSD, that relates to
2  truthfulness; there does not appear to be any set of special
3  circumstances here that would warrant departing from the general
4  rule that opinions regarding Plaintiff's credibility, and her
5  credibility with respect to the material allegations, are
6  inadmissible.

7       Accordingly, Defendant's motion in limine to exclude
8  testimony and opinions regarding Plaintiff's credibility IS
9  GRANTED.

10      C. <u>Opinions on Cultural Practices</u>

11      Defendant would exclude Juri's testimony and opinions
12 regarding Mexican burial and funeral practices because Juri is
13 unqualified.

14      Juri testified that she had received a lot of training in
15 cultural diversity, had lived in Puerto Rico for four years, and
16 currently treated Hispanic clients in Spanish, including a lot of
17 people from Mexico, Puerto Rico, and Chile; she was a Catholic.
18 (Rosati Decl., Ex. 3, Dep. p. 146.) She stated in her declaration
19 that she speaks Spanish, is bilingual, understands the spiritual
20 and cultural values of Roman Catholic Hispanic people, such as
21 Plaintiff, and she visited Mexico numerous times, although the
22 nature and extent of the contact with Mexico or burial or funeral
23 customs is not specified. She states that she is familiar with
24 Mexican burial customs, where the burial and memorial services
25 may be separated by an interval of time, but the basis for the
26 familiarity is uncertain.

27      The relevance of this testimony is uncertain, but it appears
28 that it is part of an effort to set forth a cultural context in

which to establish the nature or extent of Plaintiff's damages resulting from an apparent assertion that Plaintiff fabricated in some respect in connection with funeral or family leave that Plaintiff took in order to visit Mexico, or that Plaintiff abused the leave system. It may also be for the purpose of buttressing Plaintiff's credibility regarding the leave, her conduct regarding it, and an apparent controversy that arose thereafter concerning her use of the leave.

In some sense, a cultural background or context for Plaintiff's experiences with respect to the funeral leave would be based on specialized knowledge of cultural facts within the meaning of Rule 702. However, it does not appear that Plaintiff is qualified as an expert by knowledge, skill, experience, training, or education, or that the testimony is based on sufficient facts or data and is the product of reliable principles and methods. Although experience may be a sufficient basis for qualifying an expert, it does not appear that Juri had any special familiarity or experience with Mexican funeral practices. There is no basis for a conclusion that Plaintiff has sufficient qualifications to opine what the precise cultural context is with respect to the Mexican funeral or burial practices in question. Training in cultural diversity does not appear to constitute training regarding Mexican funeral practices. Likewise, knowledge of Spanish and even some anecdotal experience with Mexican citizens would not appear to qualify the psychologist as a cultural expert. There is evidence that Plaintiff brought Juri papers, including the death certificate, the date of the burial, photographs of various churches Plaintiff

visited, a description of the importance to Mexican people of the
importance of an island also visited, and information, apparently
from the internet, brought by Plaintiff to Juri to explain how
Mexican people celebrate the Day of the Dead or a funeral ritual.
(Id. pp. 25-30.) However, there is no evidence of Juri's
qualifications to render an opinion on Mexican funeral practices
or the special cultural significance of bereavement activities in
Mexico. Cf. United States v. Castaneda, 94 F.3d 592, 595-96 (9th
Cir. 1996) (recognizing the court's discretion and upholding
exclusion of a cultural expert, a person familiar with problems
faced by migrant farmworkers, to testify to an explanation of the
Defendant's flight from police, where the person was allowed to
testify that the Defendant was afraid of governmental
deportation, and where the subject was not necessarily one that
needed illumination from an expert); Jinro America Inc. v. Seure
Investments, Inc., 266 F.3d 993 (9th Cir. 2001, amended 272 F.3d
1289 (9th Cir. 2001) (finding an abuse of discretion to admit the
defense's expert witness to testify about Korean law and business
practices, including a propensity to engage in fraud, based on
experience as a detective in Korea for many years, because the
limited experience was inadequate qualification and permitted no
more than impressionistic generalizations about Korean businesses
based on personal experiences, a hobby, newspaper articles, and
marriage to a Korean woman).

    Here, Plaintiff can testify to her family's cultural
traditions, her own conduct, and its significance with respect to
her experience in connection with the leave controversy at her
place of work and the alleged misconduct of Heid and the

1  Defendant. The jury can evaluate that testimony; it does not
2  appear that the subject is one that necessarily needs
3  illumination from an expert. Juri may testify regarding
4  Plaintiff's damages or injury, which necessarily involved to some
5  extent a cultural context as related by Plaintiff. However, it
6  does not appear that Juri has adequate qualifications on her own
7  to establish expertise with respect to Mexican burial practices
8  themselves.

9      Defendant's motion to exclude Juri's expert opinion
10 regarding Mexican burial practices IS GRANTED.

11         D. Scope of Opinion

12             1. Opinions regarding Defendant's Conduct

13     Defendant seeks to exclude Juri's opinion regarding the
14 effectiveness of Defendant's anti-discrimination procedures,
15 including that Plaintiff was victimized again by the
16 ineffectiveness of the school district in stopping Heid's
17 behavior, and regarding Heid's having instigated a poisonous work
18 environment with Defendant's doing nothing to correct it.

19     As previously noted, Juri lacks personal knowledge of the
20 conduct of Defendant and its agent. As to expertise, Juri is a
21 licensed family therapist, and has been since 1982, all in good
22 standing; she has testified in court and jury trials and has been
23 declared an expert in the areas of stress, chemical dependency,
24 family law, and post-traumatic disorder.

25     The only qualifications mentioned with respect to poisonous
26 work environment are that Juri has been retained by four
27 different school district and seven different schools by
28 insurance carriers to mediate school interpersonal conflicts

14

1  between personnel and provide training to school staff and
2  management. Further, she states that she knows about group
3  dynamics and is well aware that one person may cause discord
4  among the whole group; further, she states that if one attempt at
5  resolution is unsuccessful, there are a multitude of other
6  approaches which could be used, but Defendant did not try any of
7  them.

8      Plaintiff's qualifications are clearly geared towards family
9  therapy; her expertise is psychological. Her experience was in
10 mediating personnel disputes, not in dealing with sexual
11 harassment, fashioning or evaluating policies or procedures with
12 respect to the work environment, or judging the adequacy of
13 employers' responses to complaints of sexual harassment. It does
14 not appear that the trier would be assisted by the testimony
15 because it is up to the trier to determine the adequacy and
16 reasonableness of Defendant's actions and responses to the
17 complaints.

18     Although qualification may to some extent be a matter of
19 degree, this case is analogous to United States v. Chang, 207
20 F.3d 1169 (9th Cir. 2000) (within the trial court's discretion to
21 exclude expert testimony on authenticity of a foreign certificate
22 where the expert's expertise covered the history of issuance of
23 the certificates, not authenticity), and Jones v. Lincoln
24 Electric Co., 188 F.3d 709 (7th Cir. 1999) (qualifications in
25 material science and metallurgy insufficient to warrant opinion
26 testimony as to medical or biological issues concerning the
27 ability of lungs to absorb manganese from manganese fumes).
28     Defendant's motion to exclude Juri's opinion testimony

15

1  regarding the effectiveness of Defendant's anti-discrimination
2  procedures and the instigation and perpetuation of a poisonous
3  work environment IS GRANTED.

4           2. <u>Mexican Funeral and Burial Practices</u>

5       As previously noted, Plaintiff lacks qualifications with
6  respect to these issues; further, it would not appear that any
7  opinion in this area would be of assistance to the trier of fact.

8       Defendant's motion to exclude such evidence IS GRANTED.

9           3. <u>Opinion that Plaintiff's Diarrhea
              and Vomiting during April 2005 and Her</u>
10            <u>Deposition Was Due to Work-Related Stress</u>

11      Defendant seeks to exclude this evidence because of lack of
12  qualification to utter an opinion. Defendant relies on the
13  testimony of Dr. Laurie Hedden, Garcia's primary care physician,
14  that her vomiting in April 2005 was caused by an illness and
15  medication prescribed by Hedden, but that stress could have
16  contributed to it.

17      It appears that Juri's qualifications and methodology would
18  permit her to opine regarding the cause of a symptom such as
19  nausea, which common knowledge holds is sometimes associated with
20  stress. Although vomiting may be a biological or physiological
21  phenomenon, even the medical expert acknowledged that stress
22  could have contributed to the symptom. The soundness of the
23  opinion and the facts upon which it was based may be explored by
24  cross-examination. It has been recognized that a psychologist may
25  testify that physical symptoms, such as sexual problems, fatigue,
26  and difficulty breathing, are caused by a psychological
27  phenomenon where they are related to the psychological diagnosis.
28  <u>Ferris v. Pennsylvania Federation Brotherhood of Maintenance of</u>

1  Way Employees, 153 F.Supp.2d 736, 742 (E.D.Pa 2001). Here, the

2  physical symptom of vomiting or nausea may constitute physiologic

3  reactivity upon exposure to events that symbolize or resemble an

4  aspect of the traumatic event, phenomena included in the

5  diagnostic criteria for PTSD.

6        Accordingly, the Court DENIES Defendant's motion to exclude

7  the testimony of Juri regarding Plaintiff's PTSD and the

8  causation of distress, other symptoms, and injury as a result of

9  Plaintiff's experience with Heid and Defendant.

10            E. Reliability of Expert's Method

11       Fed. R. Evid. 702 provides:

12            If scientific, technical, or other specialized
             knowledge will assist the trier of fact to understand
13           the evidence or to determine a fact in issue, a witness
             qualified as an expert by knowledge, skill, experience,
14           training, or education, may testify thereto in the form
             of an opinion or otherwise, if (1) the testimony is
15           based upon sufficient facts or data, (2) the testimony
             is the product of reliable principles and methods, and
16           (3) the witness has applied the principles and methods
             reliably to the facts of the case.
17
         By way of overview, in accordance with Fed. R. Evid. 104(a)
18
   (providing that generally, preliminary questions concerning the
19
   qualification of a person to be a witness, the existence of a
20
   privilege, or the admissibility of evidence shall be determined
21
   by the court) and 702 (expert opinion evidence), it is suggested
22
   that the possible preliminary fact determinations that a district
23
   court must make upon objection may include 1) whether the
24
   testimony is based on scientific, technical, or other specialized
25
   knowledge; 2) whether the expert's testimony will assist the
26
   trier of fact; 3) whether the witness is a qualified expert; 4)
27
   whether the information underlying the opinion was of a type
28

1  reasonably relied upon by experts in the particular field in

2  forming an opinion; and 5) whether the testimony is both reliable

3  and relevant. Jones and Rosen, Federal Civil Trials and Evidence

4  § 8: 1627 (Rutter 2006); Daubert v. Merrell Dow Pharmaceuticals,

5  Inc., 509 U.S. 579, 590-95 (1993).

6      In determining to admit scientific evidence, the trial court

7  must determine if the evidence is relevant and reliable. Daubert

8  v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)

9  (upholding the trial court's admission of a well-credentialed

10 expert's opinion, based on a review of extensive published

11 scientific literature, that maternal use of a specific

12 pharmaceutical was not a risk factor for human birth defects, and

13 exclusion of other well-credentialed experts who based their

14 opinions regarding causation of birth defects on test-tube and

15 live animal studies, chemical structure analyses, and unpublished

16 and therefore not peer-reviewed re-analysis of previously

17 published human statistical studies). In order for a scientific

18 expert's opinion, inference, or assertion to be reliable, it must

19 be derived by the scientific method, with science being

20 recognized as a process for proposing and refining explanations

21 about the world that are subject to further testing and

22 refinement; further, it should be supported by good grounds

23 (appropriate validation) based on what is known. Id. p. 590.

24 Evidentiary reliability or trustworthiness of scientific evidence

25 is based on scientific validity in the context of the purpose for

26 which the evidence is offered; there must be a valid scientific

27 connection to the pertinent inquiry as a precondition to

28 admissibility. Id. In place of a personal knowledge requirement

1  for the basis of an opinion is the assumption that the expert's
2  opinion will have a reliable basis in the knowledge and
3  experience of his discipline. <u>Id.</u> p. 592.

4      The relevance portion of Rule 702 consists of the
5  requirement that the evidence or testimony must assist the trier
6  to understand the evidence or to determine a fact in issue, and
7  must be sufficiently tied to the facts of the case that it will
8  aid the jury in resolving a factual dispute. <u>Id.</u> p. 591.

9      The trial court's determination of preliminary facts
10 concerning the admissibility of expert evidence that is based on
11 scientific, technical, or other specialized knowledge should be
12 stated on the record; the proponent of challenged evidence bears
13 the burden of establishing its admissibility by a preponderance
14 of the evidence. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,
15 509 U.S. 579, 592 n. 10 (1993); <u>Kumho Tire Co., Ltd.</u>
16 <u>v.Carmichael</u>, 526 U.S. 137, 149-51 (1999); <u>Elsayed Mukhtar v.</u>
17 <u>California State University Hayward</u>, 299 F.3d 1053 (9th Cir.
18 2002).

19     Here, Defendant seeks to exclude Juri's opinions and
20 testimony regarding Garcia's suffering from post-traumatic stress
21 disorder, psychiatric distress, decline in work performance, deep
22 damage, and a change in her relationship with her husband as a
23 result of Heid's conduct.

24     Defendant argues that Juri's method was unreliable because
25 Juri did not know about or use established standards in her field
26 for differential diagnosis. There is evidence that Juri did not
27 sit down and use a specific or current diagnostic tree; she did
28 not use the American Psychological Association's <u>Diagnostic and</u>

19

1  <u>Statistical Manual of Mental Disorders, Fourth Edition, Text</u>
2  <u>Revision</u>, in diagnosing Plaintiff; she had the DSM-IV,
3  copyrighted in 1994, but only the diagnostic criteria, and not
4  the commentary. She testified that no one in her professional
5  organizations had promulgated the newer version, and consistent
6  use of the older codes had produced no problems with codes for
7  insurance billing; further, the industry standard was moving to
8  ICD codes, but that had not yet been mandated. (Dep. pp. 52-53.)
9  She went through the diagnostic criteria for PTSD with Plaintiff
10 in order to present normalizing experience, and she noted which
11 diagnostic criteria Plaintiff had. (Dep. p. 55-56.) Although Juri
12 did not formally go through the decision tree for differential
13 diagnosis, she had studied how to diagnose during her training
14 for her license; and because she had done it so often, it was
15 automatic as activating the clutch in a car, and she determined
16 that Plaintiff had PTSD, depression, and marital and occupational
17 problems. (Dep. pp. 55-57.)

18     In her declaration, Juri stated that she made a differential
19 diagnosis of Plaintiff, narrowing the diagnosis from chronic
20 depression, generalized, anxiety disorder, social anxiety
21 disorder, agoraphobia, obsessive compulsive disorder,
22 panic/anxiety disorders and/or malingering to post trauma stress
23 disorder as the only diagnosis that embraced all of Plaintiff's
24 symptoms, using the diagnostic criteria in the DSM IV Statistical
25 Manual. (Decl. pp. 2-3.) She noted that Plaintiff was not
26 obsessive compulsive or a malingerer. (<u>Id.</u> p. 3.) Further, the
27 criteria sets used for the diagnosis did not differ in the DSM-
28 IV-TR and DSM-IV. (<u>Id.</u>)

1    There is no expert evidence contradicting Juri's assertions,

2 and Defendant admits that no changes were made in the later

3 manual in the criteria sets for diagnosis; however, Defendant

4 notes that additional or updated information regarding associated

5 features is provided.

6    Juri held approximately a dozen clinical consultations with

7 Plaintiff, performed mental status examinations, and reviewed

8 journals and self-scoring scales filled out by Plaintiff. Juri

9 also considered Plaintiff's performance evaluations and her

10 deposition, and she met with two of Plaintiff's coworkers. (Dep.

11 p. 33; Report of June 2, 2005.)

12    The Court concludes that Juri adhered essentially to a

13 process of differential diagnosis. She distinguished her

14 diagnosis from acute stress disorder; her path of differential

15 diagnosis included the major differentiations set forth in the

16 DSM-IV-TR (Rosati Decl., Ex. 6 p. 467), including consideration

17 of mood disorders, chronic depression, other anxiety disorders,

18 obsessive-compulsive disorder, and malingering.

19    She did not evaluate whether any of her anxiety disorder was

20 attributable to the physiological effects of medication because

21 Juri was not a physician and thus was not competent to do so;

22 however, she determined that Plaintiff's anxiety began before she

23 was medicated. (Dep. p. 61-62.) She determined that Plaintiff did

24 not have anxiety disorder due to general medical conditions

25 because her anxiety arose when the problems with Heid arose; her

26 attempt to review medical records was thwarted by the physician's

27 failure to send all the requested records. (Dep. pp. 63-64.) Juri

28 determined that Plaintiff was borderline with agoraphobia that

was not full-blown, and she did not have a social phobia or
social anxiety disorder; she only had anxiety disorder around
Heid. (Dep. 76.) She determined (made an educated guess) that
Plaintiff used alcohol to cope with stress and anxiety and that
the alcohol did not cause the problem. (Dep. p. 66.) Juri went
through generalized anxiety disorder, but it was not as complete
as PTSD, so she settled on PTSD. (Dep. p. 78.)

The Court concludes that Juri's opinion was reached pursuant
to a reliable scientific method, namely, differential diagnosis,
whereby it is determined which of two conditions or diseases with
similar symptoms is the one suffered by the patient by systematic
comparison and contrasting of clinical findings; it is a standard
scientific technique of identifying the cause of a medical
problem by eliminating likely causes until the most probable one
is isolated. Such a method, if properly conducted, is recognized
to be admissible under Daubert. Clausen v. M/V New Carissa, 339
F.3d 1049, 1057 (9th Cir. 2003). Competing causes generally
capable of causing the symptom or condition should be considered,
and hypotheses should each be eliminated by a process of
providing reasons, using scientific methods and procedures as
distinct from subjective beliefs or unsupported speculation,
until a conclusion is reached as to the most likely cause of the
findings. Id. p. 1058.

Here, Juri used a differential diagnosis. The fact that she
might have not ruled out a general medical condition or
medication should not preclude a finding that the otherwise
reliable methodology was indeed reliable; Juri was not a
physician. However, she did consider medication and use of

1  alcohol and made conclusions thereon based on data and logic in
2  light of her experience and training. She stated in her
3  declaration that she did consider malingering. (Decl. p. 2.)

4       It has been recognized that not every possible cause must be
5  ruled out in order for the differential process to be considered
6  reliable enough to be admitted. See, Heller v. Shaw Indus., Inc.,
7  167 F.3d 146, 156 (3d Cir. 1999); see, Weinstein's Federal
8  Evidence § 702.06[2][c] n. 48 (2d ed. 2006) (citing numerous
9  authorities). Strict or perfect adherence to method is not
10 required. S.M. v. J.K., 262 F.3d 914, 921 (9th Cir. 2001) (opinion
11 of psychiatrist that Plaintiff suffered from PTSD held admissible
12 even though the expert testified that he did not rely solely on
13 the DSM criteria but also on his own understanding of the
14 disorder, which permitted triggering by an event less severe than
15 one outside the range of usual human experience, because later
16 revisions of the DSM supported the expert's criterion and thus
17 reflected general acceptance).

18      To the extent that Defendant seeks to show that the decision
19 was unsound, Defendant may cross-examine Juri regarding her
20 methodology and assumptions, and it is ultimately for the trier
21 of fact to evaluate the opinion.

22      There do not appear to be additional bases for challenging
23 the reliability of the evidence. The Court notes that the
24 opinions of Juri appear to be based on scientific, technical, or
25 other specialized knowledge. The testimony will directly assist
26 the trier of fact to understand the nature and extent of any
27 damages suffered by Plaintiff. The information underlying the
28 opinion appears to be of a type reasonably relied upon by experts

in the particular field in forming an opinion.

Defendant's motion to exclude this evidence IS DENIED.

### F. Undisclosed Opinions

Defendant also seeks to exclude any opinions not set forth in the Rule 26 disclosure. The Court has not been made aware of any such opinions; however, it notes that the general rule is that matters not disclosed are not admissible without establishing substantial justification or harmlessness. Fed. R. Evid. 37(c). At this point there is no specific undisclosed evidence before the Court or any showing of substantial justification or harmlessness; thus, no undisclosed opinion evidence should be admitted.

Defendant's motion to exclude such evidence IS GRANTED.

### II. Exclusion of Testimony and Opinions of Stephen Morewitz, Ph.D. (Doc. 61)

Defendant filed a motion to exclude opinion and other testimony of Plaintiff's expert Stephen Morewitz, Ph.D., on December 5, 2006, including a notice, memorandum, declaration, and exhibits. Plaintiff filed opposition on December 27, 2006, including a memorandum and the declarations of Rey Hassan and expert Stephen Morewitz, Ph.D., and a resume of Dr. Morewitz. The motion was argued on February 6, 2007, by Rey Hassan, counsel for Plaintiff, and Robert Rosati, counsel for Defendant, and the matter was submitted to the Court for decision.

This motion again seeks to exclude fifteen separate opinions; however, they break down into various categories which will be addressed in the following analysis.

The facts may be briefly summarized. Morewitz had worked in

assessing the impact of injuries, and specifically sexual
harassment, on the victim and the victim's social, family, and
occupational functioning; he had done research on sexual
harassment and psycho-social problems. (Rosati Decl., Ex. 3 pp.
132-33.) He had taught sociological research methods including
survey, field research, experimentation, and collection and
analysis of data from different sources, using a widely
recognized text in his teaching; although sociology and
psychology overlap, there are basic methodological criteria,
including two different approaches to field research. (Rosati
Decl., Ex. 3 p. 11-13.) In studying organizations, sociologists
use a variety of methods and theories, including field research,
survey research, and experimental research. There are a variety
of methods of performing field research, including unobtrusive
methods, such as analysis of existing records, organizational
records, and records of human behavior; further, there is
collection of data in the field and design or use of a
questionnaire. (Id. p. 14.) Field research involves going into an
organization or organizations, looking at the policies and
observing how they are being implemented, interviewing human
resource managers and personnel as well as employees to find out
what issues are coming up, what the organizational problems are,
assessing the experience of people being trained, checking for
problems with training of employees and staff regarding sexual
harassment and the procedures, comparing the attitudes and
knowledge of managers with those of employees, and assessing it
through the process of triangulation; selecting interview data,
reviewing documents, comparing and contrasting, determining

1  whether the documents are being used; assessing the effectiveness
2  by looking at outcomes, such as claims or lawsuits filed compared
3  to others in the field. He had participated in one of the first
4  studies of sexual harassment in the late 1970's, which led to his
5  writing of a book on sexual harassment. (Id. 14-19.)
6  Triangulation was taking different sources of data and relating
7  the sources to each other to discern the presence of
8  epistemological gaps, inconsistencies, or errors in knowledge or
9  perceptions; if needed, additional data would then be collected.
10 (Id. p. 22.)

11      Morewitz testified that he made a psychosocial evaluation of
12 Plaintiff to evaluate the social, occupational, and family impact
13 considering the issues of trauma; it was not purely an approach
14 of clinical psychology. Such evaluations could be performed in
15 different ways, but he used the Social Readjustment Rating
16 Questionnaire developed by Holmes and Rahe, a social adjustment
17 scale that was developed to assess the impact of life events on
18 social functioning, family functioning, occupational functioning,
19 and educational functioning, and that has been used extensively
20 and found to have high reliability and validity. He used it in
21 conjunction with interviewing and observation and review of
22 depositions; he then analyzed it and prepared a report. Plaintiff
23 filled out the scale, and then Morewitz conducted an observation
24 interview of Plaintiff about it for several hours. He then
25 reviewed the depositions, reviewed his book, and prepared the
26 report. (Id. pp. 43-44, 89.) The Holmes and Rahe instrument
27 permitted bringing up issues such as a hostile work environment
28 and/or anxiety and fear about retaliation on the job causing

errors in job performance. (Id. p. 147.) In forming his opinions, he used methods that are approved, including triangulation from different data sources, looking for inconsistencies and patterns, doing further research, and then looking for further corroboration for consistencies, to determine whether there is a consistent pattern over time. He used the protocol, or screening devices to assess psycho-social impact of problems, and he had special knowledge and training in the use of protocols and had in fact developed them. (Id. p. 144-45.) The techniques he utilized in evaluating the claim had been subject to peer review; the Holmes and Rahe scale and the use of triangulation were classic techniques that were in the textbooks, and the instrument had quantitative scores. (Id. p. 147.)

Plaintiff had experienced fifteen out of forty-three events in the rating scale, indicating that her problems with Heid had significantly impaired her occupational, family, and social functioning. (Tr. 149.)

Further, in his declaration submitted in opposition to this motion, Morewitz stated that the Homes and Rahe Social Readjustment Rating Scale (SRRQ) is commonly used and well known as a standard instrument to assess the type of functioning to which he seeks to testify; its findings have been replicated and validated, with validation in more than thirty-four recent peer-reviewed scientific publications. Triangulation is a method he has used to collect and analyze data as a valuable research strategy; he notes its use in evaluation of social, family and occupational functioning.

A. Compliance with Defendant's Policies

1    Defendant seeks to exclude expert opinion as to whether or

2 not Defendant effectively followed its own sexual harassment

3 policies and procedures in responding to Plaintiff's complaints

4 of sexual harassment and workplace abuse against Heid.

5    Pursuant to Rule 702, specialized knowledge must assist the

6 trier of fact to understand the evidence or to determine a fact

7 in issue. The test is to undertake a common sense inquiry whether

8 the untrained layperson would be qualified to determine

9 intelligently and to the best possible degree the particular

10 issue without enlightenment from those having a specialized

11 understanding of the subject involved in the dispute. Fed. R.

12 Evid. 702, Advisory Committee Note (1972). It is within the trial

13 court's discretion to exclude expert testimony where the jury is

14 capable of evaluating the testimony presented at trial and could

15 determine for itself the matter in question. Curtis v. Oklahoma

16 City Public Schools Bod. of Educ., 147 F.3d 1200, 1219 (10th Cir.

17 1998) (upholding the trial court's exercise of discretion where

18 expert testimony was allowed regarding what effective recruiting

19 was and the potential negative effects of recruiting during the

20 summer, but disallowed with respect to whether the recruitment

21 plan in the case was effective and constituted harassment or

22 retaliation because the issues were not beyond the ken of people

23 of ordinary intelligence); Pelster v. Ray, 987 F.2d 514, 526 (8th

24 Cir. 1993) (suggesting that even if a witness had qualified as an

25 expert, testimony regarding whether a vehicle's odometer had been

26 rolled back based on odometer readings on two titles, odometer

27 statements, and check-in sheets was within the ability of any lay

28 person to compare and determine).

28

1   Here, determining whether Defendant's own policy was
2   followed or not is within the ability of a lay person
3   intelligently to determine without the aid of specialized
4   knowledge.

5   B. Failure to Investigate, Monitor, and Train,
       and Sub-standard Response
6
7       Defendant seeks to exclude evidence regarding whether
8   Defendant and Elliott failed to investigate Garcia's complaint of
9   sexual harassment and abuse, monitor the progress towards a
10  resolution, and ensure Heid did not retaliate; whether
11  Defendant's employees were properly trained in what constitutes
12  abusive behaviors, including sexual harassment; and whether
13  Defendant's conduct fell below the standards of an organization
14  in responding effectively to Garcia's complaints.

15      Initially, the Court notes that it would be helpful to the
16  trier of fact to have information from someone with specialized
17  knowledge of the elements of effective sexual harassment policies
18  and implementation thereof in the workplace. Although generally a
19  lay person is qualified to determine what is reasonable in
20  various circumstances, Morewitz's experience includes twenty-
21  three years as a social scientist at academic and other
22  institutions, where he taught, trained regarding, and researched
23  sexual harassment policies and procedures. He taught and
24  conducted research on sexual harassment policies and procedures
25  to students who included human resource managers and
26  administrators. He is certified by the National Association of
27  Forensic Counselors. He appears to have specialized knowledge of
28  the sociological aspects of these subjects as well as an

29

1  understanding of sociological methods. If he has sufficient
2  specialized knowledge regarding the elements of effective sexual
3  harassment policies and effective implementation of such policies
4  within the relevant context (i.e., with respect to institutions
5  such as Defendant during the relevant time period, etc.), he
6  could testify to norms or standards concerning such policies and
7  implementation thereof, and the manner in which and extent to
8  which Defendant's conduct deviated from normative standards. His
9  expertise would be helpful to the trier in evaluating the
10 appropriateness and effectiveness of the Defendant's response to
11 Plaintiff's complaints. <u>Compare</u>, <u>Davis v. Mason County</u>, 927 F.2d
12 1473, (noting the appropriateness of admitting expert testimony
13 that compares the conduct of parties to an industry standard),
14 overruled on another point in <u>Davis v. City and County of San
15 Francisco</u>, 976 F.2d 1536, vacated in part and hearing denied in
16 <u>Davis v. City and County of San Francisco</u>, 984 F.2d 345 (1993).
17    Here, it is unclear whether Plaintiff is proposing to offer
18 Morewitz to give such testimony, or is instead attempting to
19 establish that Morewitz conducted a scientific study of the
20 specific sexual harassment policies and implementation thereof by
21 Defendant using specific sociological methods, and that his
22 opinion should be admitted based on such a process. In view of
23 the centrality of the issue that the trier must decide, namely,
24 the reasonableness of Defendant's response to Plaintiff's
25 complaint, the Court has determined not to rule on this aspect of
26 this motion at this juncture. Instead, further clarification of
27 Plaintiff's offer, including the basis for the opinion and method
28 used, is required. The Court has only very general information

30

regarding Morewitz's experience; it is difficult at this point to determine his actual familiarity and experience with the elements and implementation of sexual harassment policies in institutions such as Defendant and other pertinent aspects of qualification to render an opinion on a standard within educational employment such as Plaintiff's. Further, if Morewitz's testimony on this matter is not sought to be introduced to show an industry standard and deviation therefrom, then it is not clear what method or expertise is being relied upon.

The Court expects to be further informed regarding this and further proposes to arrange with counsel to hold a hearing outside the presence of the jury before Morewitz begins his testimony at which these preliminary matters relating to his testimony concerning the adequacy of the investigation and response may be presented, considered, and ruled upon by the Court.

Ruling on this portion of Defendant's motion IS RESERVED for further proceedings.

C. <u>Evidence of the Effect of Defendant's Policies, Procedures, and Conduct</u>

Defendant seeks to exclude evidence of the effect of Defendant's policies, procedures, and conduct, including the possible impact of Heid's behaviors on Plaintiff's family, social, and occupational functioning, including but not limited to Dr. Morewitz's psycho-social evaluation regarding the social impact, occupational impact, and family impact of the alleged events on Garcia, and any opinions derived from his use of the Holmes and Rahe's "Social Readjustment Rating Questionnaire"; and

1  whether Plaintiff suffered stress, anxiety, depression, and
2  stress-related health problems, including aggravation of her skin
3  condition, Vitiligo, severe stress which resulted in multiple
4  health problems and major disruption of her occupation, social,
5  and family functioning, and was prescribed anti-depressant
6  medication as a result of her problems in dealing with Heid
7  because of her problems in dealing with Heid.

8       With respect to the determination of reliability, there is
9  no exhaustive list of factors to be considered, but factors noted
10 by the authorities include whether the scientific theory or
11 technique can be and has been tested, whether it has been
12 subjected to peer review and publication, whether there is a
13 known or potential error rate, and whether it is generally
14 accepted in the relevant scientific community; the inquiry is
15 whether the analysis undergirding the experts' testimony falls
16 within the range of accepted standards governing how scientists
17 conduct their research and reach their conclusions, and thus the
18 party presenting the expert must show that the expert's findings
19 are based on sound science by presenting some objective,
20 independent validation of the expert's methodology. Daubert v.
21 Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1316-17 (9th Cir.
22 1995).

23      Here, Morwitz testified that he used a reliable,
24 established, accepted method and protocol; the techniques he
25 utilized in evaluating the claim had been subject to peer review.
26 He had special knowledge and skill in using the protocol. There
27 is no expert evidence contradicting this evidence or otherwise
28 creating doubt as to the reliability of the Holmes and Rahe

scale. Questions regarding the precise use of triangulation in his assessment may be covered on cross-examination, but even if the Court were to accept the fact that some experts may misuse triangulation, it has not been established that there was any misuse in the present case. It appears that the method used to assess the social, family, and occupational effects on Plaintiff was reliable.

Morewitz reviewed deposition testimony, pleadings, and other discovery in addition to administering the instrument and interviewing Plaintiff. Although he did not review all of the material before rendering his initial report, the later additional review did not change his opinion. Questions regarding the precise factual basis or responses of Plaintiff on the instrument may likewise be covered on cross-examination.

Accordingly, Defendant's motion in limine IS DENIED with respect to opinions based on the use of the Holmes and Rahe instrument and as to the nature and extent of the effects on the sociological, occupational, and family functioning of Plaintiff.

To the extent that Defendant objects that a sociologist is not qualified to opine as to the truth of falsity of Plaintiff's harassment allegations, and as to causation of medical or physical conditions (i.e., that anxiety, depression, aggravation of Vitiligo, and stress-related health problems were suffered by Plaintiff as a result of sexual harassment or Heid's conduct, and that anti-depressant medication was prescribed as a result of Heid's conduct), the Court agrees that opinions as to the truth of falsity of Plaintiff's allegations of sexual harassment, and further opinions as to purely physical phenomena and the

33

1  causation thereof, are not helpful to the trier and are beyond
2  the expertise of this expert, respectively.

3      Further, to the extent that Defendant objects that Morewitz
4  should not be able to repeat Plaintiff's assertions of fact as
5  his opinions, again, the Court notes that it is anticipated that
6  Plaintiff will be testifying before Morewitz testifies, and it
7  would be duplicative to have the expert recite in detail all the
8  factual assertions of Plaintiff. As previously noted, it is not
9  the province of the expert to testify to the truthfulness of the
10 allegations.

11     However, the Court understands from Morewitz's testimony
12 (Dep. pp. 131-32) that Morewitz has assumed the truth of
13 Plaintiff's representations because he stated that it was
14 "implicit," and that it was the role of the trier of fact, and
15 not his role, to determine the facts; he has merely assumed that
16 Plaintiff is credible in forming his opinions. Again, as
17 previously analyzed, it is not the province of the expert to
18 testify generally as to the Plaintiff's credibility or as to the
19 ultimate issue of whether or not the events claimed by Plaintiff
20 to have occurred did or did not actually occur.

21     Accordingly, consistently with the foregoing analysis,
22 Defendant's motion to exclude opinions as to these matters IS
23 GRANTED.

24          C. Undisclosed Opinions

25     As previously noted, the Court understands that only
26 opinions previously disclosed in conformity with Fed. Rule Civ.
27 Proc. 26 are admissible. Thus, to the extent that this motion
28 seeks to exclude any opinions not disclosed, the motion IS

                              34

1  GRANTED.

2  IT IS SO ORDERED.

3  **Dated:    March 8, 2007**                    **/s/ Sandra M. Snyder**
   icido3                                UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28